[Crim. No. 682. In Bank.—August 7, 1900.]

In re JAMES TAYLOR ROGERS, on Habeas Corpus.

CRIMINAL LAW—WITNESS BEFORE GRAND JURY—REFUSAL TO ANSWER—PERTINENCY OF QUESTIONS—INCRIMINATION OF WITNESS—CONTEMPT.—Where a witness who was subpoenaed before the grand jury to testify upon the examination of a charge against another person for forging a check given in payment of the interest of an alleged heir of an estate, whose existence was a subject of inquiry, refused to answer questions propounded to him, including a question as to whether the accused did not inform the witness that the alleged heir was not the legal heir of the deceased, on the grounds that the questions were not pertinent to the matter under inquiry, and that the answers might tend to incriminate him and degrade his character, it is sufficient to sustain a punishment for contempt for refusal to answer that the one question so included appears to have been pertinent to the charge under inquiry, and that it did not appear and was not fairly shown to the court that an answer of the witness thereto would have a tendency to incriminate him or to degrade his character.

HABEAS CORPUS in the Supreme Court to test the validity of a punishment by the Superior Court of the City and County of San Francisco of the petitioner for contempt in refusing to answer questions before the grand jury. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Henly & Costello, for Petitioner.

Lewis F. Byington, contra.

HENSHAW, J.—The petitioner was subpoenaed before the grand jury sitting in the city and county of San Francisco, and having been sworn as a witness before that body, there were propounded to him certain interrogatories. Upon his refusal to answer, the foreman of the grand jury made affidavit setting forth at length the questions which had been propounded to the contumacious witness, and stating that the body of which he was foreman was engaged in the consideration of a charge of felony against one John M. Chretien as to whether said John M. Chretien had forged the indorsement "John Sullivan" on a check. The check was alleged to have been given in payment for the interest of John Sullivan, the alleged heir of Joseph Sullivan, deceased, in the estate of Joseph Sullivan, deceased, and (so proceeds the affidavit) "it then and there became material to know whether said John Sullivan was the brother and lawful heir of said Joseph Sullivan, deceased, and as to whether any such person as John Sullivan was in existence." This affidavit having been presented to the presiding judge of the superior court, Rogers was cited to appear, and did appear, and made a showing why he should not be compelled to answer the questions propounded. After hearing, the court made its order and judgment that the questions propounded were each and all legal, proper, and pertinent to the matter under inquiry by the grand jury, and directed this petitioner, when next called before the grand jury, to answer them. Again called before the grand jury, the witness again refused to answer, justifying his contumacy upon the ground: 1. That the questions were not relevant or pertinent to the matter under inquiry; and 2. That the answers to them might tend to incriminate him and to degrade his character. As to the relevancy and pertinency of the questions propounded it is sufficient to say that the decision of that matter rests with the judge and not with the witness, but that the decision of the judge at *nisi prius* is reviewable by this tribunal under the writ. (*Ex parte Zeehandelaar*, 71 Cal. 238.) Otherwise the production of evidence would cease to be under the control of the court, and would depend upon the opinion of the witnesses.

If any one of the eleven interrogatories propounded to the witness appears to have been relevant and pertinent to the

matter under inquiry, the witness' refusal to answer this question must be at his peril. If it be relevant and pertinent, he will be protected in his refusal to answer, if it appear that it will have a tendency to incriminate him, or will have a direct tendency to degrade his character, and the question be not addressed to the very fact in issue or to a fact from which the fact at issue will be presumed. (Code Civ. Proc., sec. 2065.) In most instances the question propounded to a witness will upon its face disclose whether or not it has a tendency so to incriminate or degrade. If this does not appear by the question itself, as if the question be innocent in form but some possible answer to it might so tend to incriminate or degrade, then it is the duty of the witness to make it appear to the court that his answer might at least have this tendency. It is for the court to pass upon the sufficiency of the objection which the witness urges to answering, and not for the witness to decline to give relevant and pertinent testimony which may be harmless to himself, upon his mere declaration that his answer may tend to incriminate or degrade him.

Of course, the decision of the trial court is here reviewable. We need not be at pains, then, to examine all of the questions propounded to this witness, with a view to determining their relevancy and pertinency. If any one be relevant and pertinent, for his refusal to answer it the witness was properly adjudged to be in contempt, unless he fairly showed that his answer would have a tendency to incriminate or degrade him.

Amongst the questions thus propounded was the following: "Q. Did John M. Chretien inform you that John Sullivan was not the legal heir of Joseph Sullivan, deceased?"

The relevancy and pertinency of this inquiry to the matter under investigation by the grand jury is apparent, and is made so by the affidavit of the foreman presented to the court. Chretien's knowledge as to whether John Sullivan was an actual or fictitious person, and Chretien's knowledge as to whether the so-called John Sullivan was in truth the lawful heir of Joseph Sullivan, deceased, were matters having a pertinent bearing upon the criminal charge against him which was being investigated. The witness, then, could not ground his refusal to answer this question upon any lack of pertinency, nor does it ap-

pear from the language of the question, nor is it made to appear at all, that his answer to the question would either have a tendency to incriminate him or degrade his character. It appears, therefore, that as to at least one interrogatory (and this inquiry need go no further) the witness' refusal to answer was not justified in law, and that, therefore, he was properly adjudged to be in contempt.

Let the writ be discharged and the prisoner remanded.

Harrison, J., Van Dyke, J., and Garoutte, J., concurred.

Rehearing denied.