[S. F. No. 2485. In Bank.—October 5, 1904.]

# JAMES TAYLOR ROGERS, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

CERTIORARI—CONTEMPT PROCEEDINGS—FORMER JUDGMENT UPON HABEAS CORPUS.—Upon *certiorari* to review a judgment imposing a fine for contempt of the superior court in refusing to answer questions propounded to the petitioner by the grand jury, a former judgment of this court upon *habeas corpus* to review contempt proceedings for refusal to answer the same questions before the grand jury is not *res adjudicata* or a bar to the subsequent proceedings upon *certiorari.*

ID.—VOID ORDER—QUESTIONS BEFORE GRAND JURY—MATTER OF INDICTMENT—FRAUD—SELF-CRIMINATION.—An order of the superior court requiring the petitioner to answer certain questions before the grand jury in relation to a matter that had been disposed of by such grand jury and was no longer pending before that body, and the manifest object of which questions was merely to make the petitioner a witness against himself before the grand jury, to show that he had aided in the accomplishment of a felony, is void, and cannot form the basis of a subsequent order of court punishing the petitioner for contempt in disobeying its former order.

ID.—CONSTRUCTIVE CONTEMPT—SUFFICIENT AFFIDAVIT REQUIRED.—Where a contempt is committed outside the presence of the court an affidavit of the facts forming the basis of judicial action must show on its face a case of contempt, and if it does not the court has no jurisdiction, and the order of contempt is void.

CERTIORARI to review a judgment of the Superior Court of the City and County of San Francisco in contempt proceedings. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

J. T. Houx, Houx & Barrett, and James Taylor Rogers, for Petitioner.

I. Harris, for Respondents.

ANGELLOTTI, J.—*Certiorari* to review a judgment of the superior court of the city and county of San Francisco imposing upon plaintiff a fine of five hundred dollars for contempt of court.

The judgment in the contempt proceedings against plaintiff declared him guilty of contempt for his refusal to answer any of eleven questions propounded to him by the grand jury of the city and county of San Francisco, after having been directed by the superior court to answer the same, and adjudged that for said contempt he pay a fine of five hundred dollars, and, further, that he be imprisoned in the county jail of said city and county for five days. Having been imprisoned under said judgment, he sought his discharge by *habeas corpus,* but was by this court remanded upon the ground that so far as the record then before the court showed, at least one of the questions propounded was relevant and pertinent to the matter under investigation by the grand jury, and it had not been made to appear that his answer to the question would either have a tendency to incriminate him or degrade his character, and that therefore his refusal to answer this question was not justified in law, and he had properly been adjudged to be in contempt. (*In re Rogers,* 129 Cal. 468.)

The defendant pleads the judgment of this court in the *habeas corpus* matter in bar of this proceeding, but we are satisfied that it can have no such effect. It is well settled that the doctrine of *res adjudicata* is not, in the absence of statutory provision, applicable to the decision of a court or judge remanding a person in *habeas corpus* proceedings. (Church on Habeas Corpus, sec. 386; *In re Ring,* 28 Cal. 247-251; *Bradley* v. *Beetle,* 153 Mass. 154; *People* v. *Brady,* 56 N. Y. 182.) Under our statute, a judgment on *habeas corpus* remanding a petitioner is not, as a matter of law, a bar to a subsequent application of the same kind to the same or another court (*In re Ring,* 28 Cal. 247), and it certainly can have no such effect in this proceeding. This is true, whether all of the material facts were presented at the first hearing or not. (*Bradley* v. *Beetle,* 153 Mass. 154.)

The transcript of the record certified to this court shows that the plaintiff, in response to the first order to show why he should not be punished for contempt for failing to answer the questions propounded by the grand jury, presented a verified answer, and a copy of this is contained in such transcript. The affidavit of the foreman of the grand jury upon which the order was based was presented and filed July 24,

1900, and stated that the questions were asked plaintiff in the investigation by the grand jury of a charge of forgery against one Chretien, and that the questions were pertinent and material in such investigation.

In his answer, plaintiff sought to make it appear that he was justified in refusing to answer any of the questions by section 2065 of the Code of Civil Procedure, which provides that a witness need not give an answer which will have a tendency to subject him to punishment for a felony, or which will have a direct tendency to degrade his character, unless it be the very fact in issue, and by section 13 of article I of the state constitution, which provides that no person shall be compelled in any criminal case to be a witness against himself. He also alleged certain facts tending to show that the investigation against Chretien had been concluded, and that an indictment had been found and presented.

No showing as to the facts was made in reply to the verified statement of plaintiff, and the court did not find that such statement was in any respect untrue, but simply found "that the matters and things set up in said answer do not constitute just and legal cause why the said questions should not be answered by said Rogers," and ordered and adjudged "that the said questions propounded to said . . . Rogers were legal and proper, and that it was the duty of said Rogers to answer the same," and further ordered that he answer each and all of said questions "whenever thereto subpœnaed and requested and when next appearing before said grand jury." The second affidavit of the foreman of the grand jury, presented August 3, 1900, simply alleged that when the witness appeared on that day in response to another subpœna issued, the same questions were again put to him, and he again refused to answer, notwithstanding the previous order of the court requiring him to so do. This affidavit is entirely silent upon the question as to whether any investigation was then being made by the grand jury as to the charge against Chretien mentioned in the first affidavit, or as to any charge against Chretien. The second order to show cause was thereupon made, and upon the hearing the court refused to allow the plaintiff to file his affidavit in reply to the order, doubtless upon the theory that the questions thereby presented had been disposed of on the previous hearing.

Thereupon the court found that the refusal of the plaintiff to answer the questions was a "direct disobedience of the order of the superior court made . . . July 25, 1900," and that he was therefore guilty of contempt, and pronounced the judgment in question. It is apparent that if the order of July 25, 1900, was invalid, the judgment subsequently pronounced is void. For it is entirely based upon the previous order, and the punishment was imposed solely for the disobedience of said order. The second affidavit of the foreman of the grand jury is manifestly insufficient as the basis of a proceeding for contempt on account of the refusal of a witness to answer questions, for it entirely fails to show that the charge against Chretien was under investigation by the grand jury at the time plaintiff was again called before that body to testify as a witness, and there is no mention in either affidavit of said foreman of any other charge to which the question might have been material or pertinent. A witness can be compelled to answer only such questions as are legal and pertinent to a matter in issue before a tribunal, and for a refusal to answer questions that are not pertinent to the issue being tried, he cannot be adjudged guilty of contempt. (Code Civ. Proc., sec. 2066; *Ex parte Zeehandelaar,* 71 Cal. 238; *Overend* v. *Superior Court,* 131 Cal. 280, 286; *In re Rogers,* 129 Cal. 468.) A grand jury, like a court, may ask only such questions as are pertinent to a matter then under investigation, and if there be no matter under investigation, a refusal to answer questions cannot be made to constitute a contempt. "When the contempt is a constructive contempt, namely, committed without the presence of the court, the affidavit of facts forming the basis of judicial action must show upon its face a case of contempt; and, if it does not, then the court is wanting in jurisdiction, and the order of contempt is void." (*Overend* v. *Superior Court,* 131 Cal. 280.)

It is therefore only by reading the second affidavit of the foreman of the grand jury in connection with the prior affidavit and proceedings, and upon the theory that a disobedience of the order of the court requiring the witness to answer the questions or any of them, would of itself, without regard to the conditions existing at the time the witness again appeared before the grand jury, constitute a contempt, that the judgment of contempt can possibly be justified.

This is apparently the theory upon which the superior court proceeded, and unless such order was a valid and enforceable order, the judgment of contempt was, as already said, unauthorized.

The order in question admitted the truth of the matters and things set up in plaintiff's answer, finding simply that such matters and things did not constitute just and legal cause why the said questions should not be answered. There is thus presented only a question of law,—viz., the question as to whether the allegations of the answer, taken as true, established a case in which the witness was justified in refusing to answer upon the ground either that the answers would have a tendency to incriminate him or degrade his character, or that they were not material and pertinent to any matter then in issue. The decision of the court adjudicating one guilty of contempt is upon both these questions reviewable either on *habeas corpus* (*Ex parte Zeehandelaar*, 71 Cal. 238; *In re Rogers*, 129 Cal. 468), or upon *certiorari* (*Overend* v. *Superior Court*, 131 Cal. 280. See, also, *Schwarz* v. *Superior Court*, 111 Cal. 106, 112.) If such a case is shown, the superior court was without power to adjudge plaintiff guilty of contempt.

We have carefully examined the allegations of the answer in connection with the questions propounded to the plaintiff, and are satisfied that he was justified upon both grounds in refusing to answer each and all of the questions.

It appears from the answer presented in the contempt proceedings that distribution of the residue of the estate of one Joseph Sullivan, deceased, including several thousands of dollars in money, had been made by the superior court of the city and county of San Francisco to an alleged heir, "John Sullivan," under such circumstances as to give rise to the suspicion that the property of the estate had, through fraud on the part of parties and attorneys appearing in the matter, been distributed to a spurious heir, and divided among those participating in the fraud. Chretien appeared as the attorney for "John Sullivan." The plaintiff, who had appeared for certain persons alleged to be heirs, and filed a petition for distribution of the residue to them, claiming that he had become satisfied that his clients were not entitled to share in the estate, had abandoned his claim, and had thus allowed the

distribution to be made to "John Sullivan." Chretien, plaintiff, and others were charged by a statement published in the San Francisco Call, a daily newspaper, with serious criminal misconduct in relation to the distribution of the estate, and an investigation was had by the superior court having jurisdiction of the estate, resulting in an order purporting to vacate the decree of distribution. In that investigation, Chretien himself testified that he had been guilty of various crimes relative to said estate, including that of forgery of various receipts purporting to have been given by "John Sullivan" for moneys received therein. Within a few days thereafter there were published in the San Francisco Examiner, a daily newspaper, two statements purporting to have been severally made by Chretien and another, accusing plaintiff, in effect, of having received six hundred dollars for the abandonment of the claim of his clients, and charging that the estate had been robbed through the instrumentality of spurious heirs, and accusing plaintiff of consciously aiding therein.

It was under these circumstances that the grand jury commenced the investigation, and, upon the theory that the same were pertinent and material in the investigation of the charge of forgery against Chretien, the eleven questions were asked of plaintiff. These questions related entirely to his, the plaintiff's, conduct and acts in the matter of said estate of Joseph Sullivan, the allegations contained in the papers filed by him therein, his knowledge and information as to whether or not "John Sullivan" was in fact the true heir of deceased, his reasons for the abandonment of the cause of his clients, and as to whether he had received any money therefor. Considered in connection with the admitted facts, the questions asked were all material and pertinent upon the question as to whether the plaintiff had himself been guilty of criminal misconduct, and with the exception of one or two were material only upon that question. The one or two questions that might possibly be considered pertinent to the investigation of the charges against Chretien went to the question of the information of plaintiff as to the falsity of the claim made by Chretien on behalf of the alleged heir, "John Sullivan," at the time that he, plaintiff, withdrew his opposition to distribution to said "John Sullivan," and thus aided in the

accomplishment of a crime. It was charged, in effect, that he had willfully aided and abetted in the commission of a felony, the obtaining of the property of this estate, amounting to several thousands of dollars, by fraud and false representations.

It requires only a reading of the questions asked to demonstrate that they were asked for the purpose of obtaining evidence upon which to proceed against the plaintiff himself, rather than Chretien, for a felony. That the answers to such questions would, if the charges made were well founded and the witness answered truly, serve such purpose, is too clear for question.

However commendable may be a desire to ascertain the truth and to punish offenders against the law, so long as we adhere to the settled policy of this country and of England, that no person shall be compelled to be a witness against himself in a criminal proceeding, so long must a witness be protected in his refusal to answer questions the answers to which will serve to show that he has been guilty of a felony, for which he may be prosecuted. Where it is made to appear that such is the nature of a question asked, a court is without power to compel an answer, and its adjudication of contempt is a nullity.

The answer in the contempt proceedings, presented in response to the first order to show cause, further, in effect, alleged that the grand jury had already, upon the testimony adduced before it, and without the evidence of plaintiff, found and presented to the superior court an indictment against Chretien, upon the charge stated in the affidavit of the foreman of the grand jury, which was one of forgery of the indorsement of a certain check, and that such indictment was pending in said court. The truth of these allegations being conceded, it is apparent that the investigation of the charge mentioned in such affidavit had been concluded, and that said charge was no longer pending before the grand jury. Under these circumstances, the questions were no longer material or pertinent to any issue before the grand jury, so far as the record shows, save and except the single question as to the guilt or innocence of the plaintiff himself.

Whatever may have been the situation when the questions were first asked, the superior court had no power to compel

the plaintiff to answer them after the issue to which they were material had been determined and the investigation thereof by the grand jury finally concluded.

For the two reasons stated, the judgment of the superior court must be held to have been beyond its jurisdiction. It is unnecessary to notice other points made by the plaintiff. It may be contended that the conclusion here reached is at variance with the conclusion in the *habeas corpus* proceeding (*In re Rogers,* 129 Cal. 468), wherein this court remanded the plaintiff to suffer the imprisonment imposed by the judgment. We have already shown that such disposition of the *habeas corpus* matter is no bar to this proceeding. It was said in the opinion filed therein that it was not made to appear that "his answer to the question would either have a tendency to incriminate him or degrade his character." Such may have been the condition of affairs in that proceeding. The opinion does not show, and the record of the proceeding does not disclose, what was made to appear therein. Nor was anything said in the opinion as to the effect of a showing that the investigation of the charge against Chretien had been finally concluded prior to the making of the order requiring plaintiff to answer the questions.

Regardless, however, of the question as to whether the *habeas corpus* matter was, upon the record then before the court, correctly decided, it is clear to us that, upon the record now before the court, the plaintiff is entitled to the relief sought.

The judgment of the superior court imposing a fine of five hundred dollars upon the plaintiff is annulled.

Shaw, J., McFarland, J., Van Dyke, J., Lorigan, J., and Beatty, C. J., concurred.

Henshaw, J., concurred upon the ground last stated.