**The People of the State of Illinois, Defendant in Error, v. Charles F. Hille, Plaintiff in Error.**

### Gen. No. 20,521.

1. CONTEMPT, § 69*—*what evidence necessary to establish direct criminal contempt.* On a proceeding for criminal contempt, where the act of contempt charged is the making by defendant to the court, on the call for trial of certain criminal prosecutions in which defendant represented the complaining witnesses, representations that the complaining witnesses had left the State and that

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

before leaving they stated to him that they did not wish to have anything further to do with the prosecutions and would not return to the State, in order to show that the making of the representations by the defendant on the occasion and in the circumstances was a contempt, it must appear beyond a reasonable doubt from the personal knowledge of the court, or by admissions of the defendant himself in open court and in the presence of the court, and from no other source, that the representations were false when made, that defendant knew of their falsity when he made them and that he made them knowing their falsity and with a wilful and malevolent intention of assailing the dignity of the court, or of interfering with its procedure and the due administration of justice.

2. CONTEMPT, § 68*—*when evidence inadmissible to support charge of direct criminal contempt.* On a proceeding for criminal contempt charged to have been committed by making false representations to the court, as to the absence of complaining witnesses in criminal cases called for trial, where the court had no personal knowledge of the falsity of the representations nor of the intention or motives of defendant in making them, and defendant, under oath, stated that he believed at the time of making the representations that they were true, from what the witnesses themselves had told him and what he had learned from other sources; that he would not have made them had he known them to be untrue; that he had no intention of deceiving or misleading the court and had no interest in the disposition of the cases in which they were made, the testimony of witnesses brought before the court in other proceedings to which defendant was not a party, and reports and rumors brought to its notice in private, are insufficient to support the charge, even though such reports and rumors are subsequently made a part of the record.

3. CONTEMPT, § 61*—*what sufficient to purge.* A joint operation of act and criminal intent being necessary to support a charge of criminal contempt, a person may purge himself of contempt by showing that he acted innocently or through ignorance and without any intention wrongfully to mislead or deceive the court.

4. CONTEMPT, § 61*—*when testimony under oath sufficient to purge.* In purging of contempt, the contemnor's testimony under oath is the equivalent of a sworn answer.

Error to the Criminal Court of Cook county; the Hon. GEORGE KERSTEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed. Opinion filed March 23, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

WILLIAM A. MORROW, for plaintiff in error.

MACLAY HOYNE and MARVIN E. BARNHART, for defendant in error; FRANCIS E. HINCKLEY, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

This writ of error to the Criminal Court of Cook county brings before us the record of a certain proceeding in that court, which resulted in the plaintiff in error, Hille, being adjudged guilty of direct criminal contempt of court and being sentenced to confinement in the county jail of Cook county for a period of one hundred and twenty days.

It appears that on April 13, 1914, the case of *The People v. Flannery et al.*, charged with robbery, and the case of *The People v. Flannery*, charged with assault, with attempt to commit murder, were called for trial before his Honor, Judge Kersten, in the Criminal Court, and that upon alleged representations made by the defendant, Charles F. Hille, plaintiff in error, that the complaining witnesses were absent, the cases, by order of the court, at the suggestion of the State's Attorney and with the acquiescence of the defendants, were stricken off the docket with leave to reinstate.

It further appears from a statement of the Court that on the following morning, April 14, 1914, reports were brought to the Judge that undue influence had been resorted to by someone for the purpose of causing the complaining witness in the Flannery cases to absent themselves so that there would be no prosecution of the cases; that collections were made and that money was raised, and that some money was paid over to the prosecuting witnesses, and for that reason they did not appear.

It further appears from the record that the Judge, upon receiving this report, deemed it advisable to call together in his chambers for a conference Hille, plain-

tiff in error, the assistant State's Attorney and others, and this was accordingly done on the afternoon of April 14, 1914. · At this conference Judge Kersten introduced the subject of the hearing by saying that he wanted the record to show what proceedings were had in court the day before, and then proceeded to state that the Flannery cases were called; that Cantwell appeared for the defendants, McKay for the State and Hille as representing the complaining witnesses, and that this record showed that "Mr. Hille in court stated that he represented the complaining witnesses and that they had left the State, and before leaving they had stated to him that they would not prosecute the defendants; also that the complaining witnesses would not return to the State; that the state's attorney then suggested that the cases be stricken off, which was accordingly done with the acquiescence of the defendants." One Briggs was then called upon to give such information as he might have on the subject, and in response stated that his information was based on hearsay; that Smith of the "Daily News" was the man who could tell what evidence his paper had; that he had heard from him that these Flannerys had been making boasts; that they were collecting money and that they were going to use it to settle the case. At this point the presiding Judge reminded those present that it is also claimed that the State's Attorney was to receive a part of the money that was raised. Hille, plaintiff in error, was then called upon for such information as he might have on the subject, and, in response, stated that he had been in the cases since the Flannerys were arrested, nearly two years before; that he had been in communication with the Chinese involved in the assault and robbery more or less since the occasion thereof, until the time the prosecuting witness, Pon Lee, left for Indianapolis, approximately a year prior to the date of that conference; that he saw Pon Lee before he left and that he, Pon Lee, then

stated that he was not coming back if the cases were ever tried. Hille further stated that the other two complaining witnesses, Sam You Sieu and Lee Wing, had been at his office many times; that they had expressed themselves as being tired and disgusted with the cases, and that they did not want anything more to do with them and particularly were they of this frame of mind following the acquittal of Ward, one of the defendants in the assault and robbery case, upon his second trial. It was further stated by plaintiff in error, Hille, that he last saw Lee Wing just before the officer in the case left for his trip abroad, which was some time in November, 1913, and that Wing had told Hille at that time that he was going to leave Chicago and was going to Tennessee; that Sam You Sieu, when seen by Hille about two weeks before the conference, declared that he was going to leave Chicago and that he did not want anything more to do with the cases, and wanted Hille to so represent to the court when the cases were called for trial. Hille further stated that the Flannerys and Sullivan were nothing to him and that there was no attempt on their part or on the part of anyone else, so far as he was advised, to make arrangements to settle or dispose of the cases. Hille further stated to the court when the Flannery cases were called that it was immaterial to him what disposition was made of the cases.

After the conference in chambers was concluded, court was convened and on motion of the assistant State's Attorney, the Flannery cases previously stricken off were reinstated.

On April 16th, pursuant to the order of court, a writ of attachment for contempt of court was issued for Sam You Sieu, one of the complaining witnesses in the Flannery cases. Under the attachment he was arrested and brought before the court and his bail fixed at $5,000, and, in default thereof, he was sent to jail. On the same day a subpoena was issued

and served on plaintiff in error, Hille, requiring him to appear as a witness on April 23rd, to testify in the matter of *The People v. Sam You Sieu,* charged with contempt. From a writ of attachment and not otherwise it appears that the nature of the contempt of Sam You Sieu consisted in his failure to appear as a witness in the Flannery cases.

On April 23, 1914, the contempt case against Sam You Sieu was called for hearing. Various witnesses were heard. Among others, the plaintiff in error, Hille, testified that he had seen Sam You Sieu in February and that Sam You Sieu had then told him that Pon Lee was in Indianapolis or Minneapolis, the witness not remembering which, and that Lee Wing was also away, and that Sam You Sieu, when told that the Flannery cases would soon be up for trial, stated that he did not want anything to do with them. Hille further testified that he did not see Sam You Sieu again until a little over a week before the Flannery cases were called for trial, and that on that occasion Sam You Sieu again declared that he did not want anything further to do with them, and made the request of Hille that he appear when the cases were called for trial and express to the court his, Sam You Sieu's, attitude towards the matter. He further stated that inasmuch as the other witnesses were away, he was going away himself and that he was going South where Lee Wing was.

Sam You Sieu, in his testimony, substantially corroborated Hille's testimony regarding the witness' attitude towards the cases and his intention of leaving the State.

Thereupon several other witnesses were called in that proceeding and the record shows that at the close of the taking of the testimony on that day the assistant State's Attorney in charge suggested that, in view of the contradictory statements of the witnesses, a rule be entered against plaintiff in error, Hille, to show

cause why he should not be held for contempt. To this suggestion the Court replied that he thought it would be better "not to act hastily but to wait and try to get all the light possible into the case," and that he would not order an attachment unless he felt it was absolutely justifiable upon further developments in the case. That case was then continued until May 1, 1914. The record then shows that on April 24, 1914, an order for an attachment for contempt was issued against Lee Wing, another one of the complaining witnesses in the Flannery cases, and that he was arrested thereunder and brought before the court and his bail fixed at $1,000, and, in default thereof, he was sent to jail.

On May 1st, pursuant to the adjournment of court, there appeared Sam You Sieu, the plaintiff in error, Hille, and Lee Wing. Lee Wing was put on the stand by the State and testified to the effect that he had not been out of the city of Chicago; that he was in the city on the day the Flannery cases were called, but had no knowledge of the cases being called, and that he was at all times ready and willing to appear as a witness and prosecute the cases.

Stewart, who was the officer in the Flannery cases, was called as a witness and in his testimony impeached the testimony of Lee Wing in important particulars.

At the close of the testimony that day the court adjourned hearing until May 7th, on which day plaintiff in error, Hille, took the witness stand, and, under oath, testified that on the morning the Flannery cases were called for trial, he in a general way and, in substance, stated to the court that the complaining witnesses had left the State and before leaving had stated to him that they would not prosecute the defendants, and that they would not return to the State; and that he then detailed to the court the information he had of the whereabouts of the complaining witnesses by stating to the court that one of them, meaning Pon Lee, was

in Indianapolis, and that he saw him before he left the State, and that Pon Lee told him, Hille, that he was going to Indianapolis; that he did not expect to return and that he did not want anything further to do with the cases; that another of the witnesses, meaning Lee Wing, was in Tennessee and that he had stated before leaving Chicago that he did not expect to return and did not want anything further to do with the prosecution of the cases; that the other complaining witness, Sam You Sieu, whom defendant had seen recently, made similar statements and had expressed his intention of going where Lee Wing was. .

Plaintiff in error, Hille, further testified that the statement made to the court on the occasion in question regarding the complaining witnesses was based upon information given him by all three of the prosecuting witnesses, and on further information given him by three or four different persons of whom he had made inquiries concerning the whereabouts of the prosecuting witnesses; that he believed at the time he made the statement to Judge Kersten on April 13, 1914, that these witnesses were out of the State of Illinois, and that he would not have made the statements had he not believed this to be a fact; that he did not know that the witnesses or any of them were within the State of Illinois or the city of Chicago at the time he made the representations to the court, but believed to the contrary; that he had no intention of deceiving or misleading the court, nor any purpose for so doing; that he had no interest in the disposition of the Flannery cases and that he came to the court that day because the witness, Sam You Sieu, had asked him to appear in court when the case was called, and express to the court his attitude and the attitude of the other witnesses towards the further prosecution of the Flannery cases, and that he had no other object in making the said representations as to the whereabouts and attitude of these witnesses other than to

give the court the facts as he believed and understood them to be.

Thereupon, after arguments of counsel were made, the proceedings were continued until the following day at ten o'clock, at which time the court entered an order finding the plaintiff in error guilty of contempt in stating to the court on the hearing of the Flannery cases that the prosecuting witnesses were out of the State, and that they did not want to prosecute the said cases, and fixed his punishment at one hundred and twenty days in the county jail.

The act of contempt charged in this case consists in the making by the plaintiff in error to the court, on the occasion of the call for trial of the Flannery cases, the representations, in substance, that the complaining witnesses in the cases had left the State of Illinois, and that before leaving it they stated to the plaintiff in error that they did not want anything further to do with the cases, and that they would not return to this State. Before it can be successfully maintained that the making of the representations on the occasion and under the circumstances in question was a contempt of the court, it must appear beyond a reasonable doubt from the personal knowledge of the court, or by admissions from the lips of the defendant himself in open court, and in the presence of the court, and from no other source whatsoever, that (1) the representations so made were false and untrue when made; (2) that the defendant knew of their falsity when he made them; and (3) that he made them knowing their falsity and with a wilful and malevolent intention of assailing the dignity of the court, or of interfering with its procedure and the due administration of justice. From what occurred in court on the day the Flannery cases were called for trial, and from the proceedings contained in this record, it must be conceded that the court had no personal knowledge of the falsity of the representations made by plaintiff in error, nor of the

intention or motives of the plaintiff in error in making them. The record does not show that the plaintiff in error admitted that he knew that the representations made by him were false at the time that he made them. On the contrary, the plaintiff in error, under oath, stated that he believed at the time of making the representations that they were true from what the witnesses had told him themselves, and from what he had learned from other sources; that he would not have made the statements had he known them to be untrue; and that he had no intention whatever of deceiving or misleading the court, and that he had no interest in the disposition of the Flannery cases. It was wholly improper for the court to consider in reaching its finding the testimony of witnesses brought before him and the reports and rumors brought to his notice in private, although such reports and rumors were made subsequently to appear in the record. Where the contempt charged is criminal in its nature, as in this case, the contemnor may answer the charge under oath either orally or in writing, as he choses, and his answer must be accepted as true except in so far as it may contradict the records of the court, or the facts that transpired in the presence of the court, and if by his answer he purges himself of the contempt charged against him, he must be acquitted thereof. "The defendant determines, by his own answer, under oath, whether he is guilty of that which is charged against him as a contempt of court, and if he fail thereby to purge himself, the court may, at once, impose the punishment." *Storey v. People,* 79 Ill. 45, 52. It was therefore improper and erroneous for the court to receive or consider any evidence or facts in determining the guilt of the accused outside of his sworn answer, and what occurred in court when the cases were stricken off. *Early v. People,* 117 Ill. App. 608, 617; *People v. Cochran,* 149 Ill. App. 369; *Oster v. People,* 192 Ill. 473.

Before a person can be found guilty of contempt of court it must clearly appear that in committing the offense complained of he was actuated by some malevolent intention to assail the dignity of the court, or to wilfully and knowingly interfere with its procedure or due administration of justice. There must be a union or joint operation of act and criminal intention. Consequently a person may purge himself of contempt by showing that he acted innocently or through ignorance and without any intention to wrongfully mislead or deceive the court. *Powers v. People,* 114 Ill. App. 323; *Kanter v. Clerk of Circuit Court,* 108 Ill. App. 287, 305.

It is evident that the court reached its conclusion as to the falsity of plaintiff in error's statement, not from the defendant, but from the testimony of other witnesses heard during the proceedings aforesaid. The first essential element necessary to be established before the guilt of plaintiff in error could be maintained was not established, therefore, through recourse to the court's own personal knowledge, nor to the record, nor to admissions made by defendant, but rather to the testimony of the witnesses called in the contempt cases against Sam You Sicu and Lee Wing. The court in a direct proceeding for contempt could not resort to such testimony nor to testimony taken in other proceedings to which plaintiff in error was not a party.

As to the second and third necessary elements to be established in order to hold defendant guilty of contempt, namely, knowledge on the part of the plaintiff in error as to the falsity of the representations made by him regarding the whereabouts of the complaining witnesses, and as to his purpose in making the representations, the court, in its order adjudging defendant guilty of contempt, recites that it finds from admissions made by the plaintiff in error to the court at the time the Flannery cases were called for trial, that the said representations so made were false and

that the plaintiff in error knew they were false at the time he made them, and that he had no reasonable grounds to believe otherwise, and that he made the representations for the purpose of impeding justice. As we read the testimony of the plaintiff in error, it was impossible to reach any such conclusion or finding from anything that the plaintiff in error said or testified to during the course of the proceedings in question. There is nothing in the testimony of the plaintiff in error upon which a finding could be predicated that at the time he made the statements to the court he knew that the prosecuting witnesses were in the city. It seems to us apparent that the court considered other testimony than that of the sworn testimony of the plaintiff in error in coming to its conclusion of guilt as to plaintiff in error. When the assistant State's Attorney suggested to the court that a charge of contempt be preferred against the plaintiff in error and that a rule be entered against him to .show cause, the court used the language quoted above. This was after the plaintiff in error had made a statement to the court of the facts and of his sources of information. The court clearly did not regard the plaintiff in error guilty from the plaintiff in error's own statement of the facts, for it clearly appears from what was said that the court was still seeking further evidence to establish a case against the plaintiff in error.

As said in *Powers v. People, supra,* "There must be an intention to do wrong."

If the representations made by the plaintiff in error were false but were made by him in the belief that they were true and without any wilful intent to deceive or mislead the court, the plaintiff in error should have been acquitted of the charge of contempt preferred against him. From the sworn testimony of the plaintiff in error no inference can be drawn, we think, that he made the statement to the court with any intent to do wrong. From his testimony it appears·clearly

that he believed the witnesses were out of the State and that, therefore, the misrepresentations to the court were not wilful, but were based upon the belief that the prosecuting witnesses in the Flannery cases had left the city with the intention of not returning. Plaintiff in error in his testimony, which was equivalent to a sworn answer, specifically denied the facts upon which the charge against him was founded, and he should have been discharged, for his answer presented an issue of fact which could not be tried by the court in a proceeding of this character.

In our opinion the judgment is erroneous and must be reversed.

*Reversed.*