[Crim. No. 1415. Third Appellate District.—March 22, 1935.]

In the Matter of the Application of MAURICE PEART for a Writ of Habeas Corpus.

Howe, Hibbitt & Johnston and O. F. Meldon for Petitioner.

Ralph W. Rutledge, District Attorney, for Respondent.

PULLEN, P. J.—The petitioner, having been by the Superior Court of Colusa County adjudged guilty of contempt and ordered to pay a fine, or in default of payment thereof, to be imprisoned in the county jail until the fine was satisfied in full, was committed in accordance with said order and judgment, and now applies to this court for a writ of *habeas corpus*.

The alleged contempt of petitioner consisted in his failure to appear before the grand jury in response to a subpoena served upon him for that purpose. The subpoena was directed to petitioner, commanding him to appear before the grand jury of the county of Colusa at a time and place therein specified, as a witness in an investigation pending before said grand jury, and was signed by Ralph W. Rutledge, as district attorney of the county of Colusa. Indorsed upon said subpoena was an order of the judge of the superior court for the attendance of petitioner, which was made upon the affidavit of the district attorney, stating he believed the evidence of the petitioner material and his attendance at the examination necessary. This subpoena, so indorsed, was duly served upon the witness in San Francisco. Upon the failure of the witness to appear as directed an attachment was issued and petitioner was arrested and brought before the court, when the judgment hereinbefore set forth was pronounced.

Petitioner claims that he is unlawfully confined in that there was no proof made of a valid and legal subpoena for the reason the subpoena was issued by the district attorney of the county of Colusa, he having no power or authority to issue the same, there being no order of the grand jury to the district attorney to issue such subpoena, and that there was in fact no investigation then pending before the grand jury, and also that the court exceeded its jurisdiction in making the order of commitment in that the testimony showed that petitioner was unable, by reason of illness, to respond to the alleged subpoena on the day fixed therein.

As to the latter point we find ample proof in the record that petitioner was able, physically, to appear before the grand jury at the time and place designated. From the transcript of testimony taken upon the hearing of the order to show cause why petitioner should not be punished for contempt, it appears that he was served on September 12th. with a subpoena directing him to appear in Colusa before the grand jury on September 27, 1934. For some time prior thereto he had been an out-patient of the University Hospital in San Francisco, but about September 1st, petitioner was able to make a trip to Oakland from San Francisco, remaining overnight. On September 20th, petitioner attended a dinner party given at a restaurant in the Latin quarter of San Francisco, and from there accompanied the group to a cabaret or night club, remaining until a late hour, where he engaged in dancing with those of his party. Immediately following the service of the subpoena petitioner went to Sacramento, where he consulted an attorney, and then to Lodi, remaining two or three days, and then returned to San Francisco. On September 29th, he left San Francisco, going by train and auto stage to Amador County, where he remained until October 12th, then returned to San Francisco, where he remained until arrested and brought to Colusa. Regardless of the testimony of the doctors that in their opinion petitioner was not in a condition to appear before the grand jury in Colusa on September 27th, we believe the trial court was amply supported in finding that petitioner was able to have appeared and testified.

However, the more serious question here presented is as to the authority of the district attorney to issue the

subpoena in question. The determination of this question depends upon the construction of paragraphs 2 and 3 of section 1326 of the Penal Code, which read as follows:

"The process by which the attendance of a witness before a court or magistrate is required is a subpoena; it may be signed and issued by: 1. . . . 2. The district attorney, for witnesses in the state, in support of the prosecution, or for such other witnesses as the grand jury, upon an investigation pending before them, may direct. 3. The district attorney, for witnesses in the state, in support of an indictment or information, to appear before the court in which it is to be tried. . . . "

It is the general rule of statutory construction, and we see no reason here for the application of a special rule, that the enumeration by a statute of persons or things affected by its provisions impliedly excludes all others. It is thus expressed in 23 California Jurisprudence, at page 740:

"The maxim or rule (*expressio unius est exclusio alterius*) is applicable to a statutory provision which confers a power or right—especially to one which grants the power or right originally—with the effect that the power or right exists only in the cases under the circumstances, and to the extent specified, and must be exercised in the manner and within the time prescribed," wherein cases in support thereof are cited. Various instances illustrating the application of the rule may be cited.

Construing section 581 (a) of the Code of Civil Procedure, the court, in *Johnson* v. *Baker*, 167 Cal. 260 [139 Pac. 86], said:

"The declaration that the court has power to . . . dismiss an action upon conditions prescribed implied the negative of the power to dismiss unless such conditions existed."

In *Favorite* v. *Superior Court*, 181 Cal. 261, 266 [184 Pac. 15, 8 A. L. R. 290], the court, construing section 170, subdivision 1 of the Code of Civil Procedure, held that a trial judge was not disqualified to hear and determine an action in which he was related to a stockholder of a corporation, the section prohibiting him so to do only when related to an officer of a corporation. To the same general effect the rule was applied in *Standard Auto Sales Co.* v. *Lehman,* 43 Cal. App. 763 [186 Pac. 178]; *Talcott* v. *Hurlbert,* 143 Cal. 4 [76 Pac. 647]; *People* v. *O'Donnell,* 37 Cal. App.

192, 193 [174 Pac. 102]; *McGahey* v. *Forrest,* 109 Cal. 63 [41 Pac. 817].

When, therefore, it is provided that a subpoena may be signed and issued by a district attorney ''for such witnesses as the grand jury upon investigation pending before them may direct'', the logical construction of the section would seem to preclude such issuance by the district attorney unless so directed by the grand jury.

■ The grand jury is not an adjunct of the office of the district attorney but is an independent judicial body, members of which are officers of the court. Upon them alone is placed the responsibility of inquiring into all public offenses committed or triable within the county and of presenting them to the court. Inasmuch, therefore, as that responsibility is placed upon the grand jury it appears that the law left with that body the power to institute and initiate such inquiries as well as the management and control thereof. If such authority were divided between the grand jury and the office of the district attorney there might result such a difference as to methods of procedure or scope of the investigation that nothing would be accomplished, and the responsibility for the default or failure of such inquiry would be divided. It would therefor appear that the office of the district attorney and that of the grand jury are not interdependent but each supreme in their respective spheres.

In examining the duties of the district attorney as enumerated in section 4153 of the Political Code we do not find him charged with instituting proceedings before the grand jury, but merely to attend upon and give advice to them upon pending matters.

As opposed to these views it is argued that in subdivision 3 of section 1326 of the Penal Code, the district attorney is authorized to subpoena witnesses ''in support of an indictment or information to appear before the court in which it is to be tried'', consequently, so it is argued, subdivision 2 was not intended to cover or pertain in any way, to the subpoenaing of witnesses for trial after the return of an indictment but was intended to include the subpoenaing of witnesses to give testimony before the grand jury. It is contended that the clause ''in support of the prosecution'' in paragraph 2, used the word ''prosecution'' in the same

way that during the trial of a case reference is made to the district attorney and to the people as "the prosecution". It is also urged that the provision "for such other witnesses as the grand jury upon an investigation pending before them may direct" was inserted for the purpose of incorporating within section 1326 of the Penal Code that which is provided in section 920 of the Penal Code, dealing with the powers and duties of grand jurors. Section 920 of the Penal Code reads as follows:

"The grand jury is not bound to hear evidence for the defendant; but it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses"; it being argued that if the evidence is to be *submitted* to the grand jury the district attorney must have the power to *produce* evidence, and where such evidence is not in his possession, he may compel its production, whether the evidence be a writing, a thing or the testimony of a witness. However, such argument fails to convince us, and even a reading of section 920 of the Penal Code seems to bear out our view and leave with the grand jury the duty of directing the district attorney to issue the process for the necessary witnesses.

Having in mind, therefore, the general rule of statutory construction as stated above and believing that the legislature would not have left to implication the granting of such a broad power to a district attorney as is here claimed, we are constrained to hold that the power to issue a subpoena upon behalf of a grand jury without their direction is an excess of jurisdiction by a district attorney.

Another point urged by the petitioner is that there is no showing that there was an investigation then pending before the grand jury at the time of the issuance of the subpoena. This question was before the Supreme Court in the case of *Rogers* v. *Superior Court,* 145 Cal. 88 [78 Pac. 344], where the respondent ordered petitioner to answer certain questions before the grand jury in relation to a matter that had been disposed of by such grand jury, and was no longer pending before that body. The court there saying:

"A witness can be compelled to answer only such questions as are legal and pertinent to a matter in issue before a tribunal, and for a refusal to answer questions that are not pertinent to the issue being tried, he cannot be adjudged guilty of contempt. (Code Civ. Proc., sec. 2066; *Ex parte Zeehandelaar*, 71 Cal. 238 [12 Pac. 259]; *Overend* v. *Superior Court*, 131 Cal. 280, 286 [63 Pac. 372]; *In re Rogers*, 129 Cal. 468 [62 Pac. 47].) A grand jury, like a court, may ask only such questions as are pertinent to a matter then under investigation, and if there be no matter under investigation, a refusal to answer questions cannot be made to constitute a contempt. When the contempt is a constructive contempt, namely, committed without the presence of the court, the affidavit of facts forming the basis of judicial action must show upon its face a case of contempt; and, if it does not, then the court is wanting in jurisdiction, and the order of contempt is void." (*Overend* v. *Superior Court*, 131 Cal. 280 [63 Pac. 372].)

In the case of *Chambers* v. *Oehler et al.*, 107 Iowa, 155 [77 N. W. 853], we quote the opinion therefrom as follows:

"The case made by plaintiff is substantially this: The defendant Oehler was a justice of the peace in and for Dubuque county. The other defendants, Wessel and Meyers, were deputized constables, whose connection with the matter will duly appear. On July 4, 1893, the justice issued a subpoena, commanding plaintiff to appear before him at 9 o'clock a. m. of said day, and testify in an action wherein one Sarah Jane Galloway was plaintiff and the Chicago, Milwaukee & St. Paul Railway Company was defendant. No such action was pending before the justice. This subpoena was served on plaintiff on that day by Wessel. Plaintiff did not respond. Thereupon the justice issued a warrant for his arrest for contempt of court. This warrant was served by defendant Meyers, who on the same day arrested plaintiff and brought him into court, where he was fined for the alleged contempt the sum of five dollars and costs, which he then paid. It is charged in the petition in one count that the action of these officers was willful and malicious, and in another count a conspiracy to injure plaintiff is charged against them.

"2. Appellant claims that the subpoena was without force or virtue, for that he could not legally be compelled to

attend court as a witness on the 4th day of July. . . . If, then, judicial business can be lawfully done on the 4th day of July, the subpoena was not void merely because it summoned plaintiff to appear on that day. Was it void because there was no such action as therein named pending before the justice, and, if so, was plaintiff justified in disobeying it? Section 3671, Code 1873, provides that 'the clerks of the several courts' (and a justice is expressly made clerk of his own court, sec. 3633) 'shall on application of any person having a cause or any matter pending in the court, issue a subpoena, etc.' We take it that the pendency of some proceedings in court is necessary in order to warrant the issuance of process for witnesses. There being no case pending in this instance, the justice had no authority to issue a subpoena for a witness. The subpoena having been issued without authority, plaintiff was justified in disobeying it. (Citing, *Dudley* v. *McCord,* 65 Iowa, 671 [22 N. W. 920]; *State* v. *District Court,* 21 Mont. 155 [53 Pac. 272, 69 Am. St. Rep. 645]; *Clark* v. *Burke,* 163 Ill. 334 [45 N. E. 235]; *St. Louis, K. & S. R. Co.* v. *Wear,* 135 Mo. 230 [36 S. W. 357, 33 L. R. A. 341]; *In re McCain,* 9 S. D. 57 [68 N. W. 163]; *Ex parte Rowland,* 104 U. S. 604 [26 L. Ed. 861]; *Brown* v. *Moore,* 61 Cal. 432.)''

 Respondent further objects to the consideration of this matter at all upon *habeas corpus,* claiming the proper remedy is by *certiorari.*

The sole purpose and function of either a writ of *habeas corpus* or a writ of review on a matter such as is here presented is to determine jurisdiction. Either proceeding, therefore, would perform the same office, that is, whether the court in adjudging petitioner guilty of contempt upon the record before us exceeded its jurisdiction. If jurisdiction is found to exist the writ must be discharged although it may appear upon the record that the court in passing upon and deciding the matter committed some error of law. *Metzler* v. *Superior Court,* 54 Cal. App. 59 [201 Pac. 139]. From the record before us it appears that petitioner was directed to appear before the grand jury by a subpoena issued upon the sole authority of the district attorney of the county of Colusa, and that upon petitioner's refusal to obey the same he now stands committed. We are there-

fore concerned here with questions of jurisdiction only and *habeas corpus* is an appropriate proceeding.

In accordance with the foregoing the judgment of contempt entered by respondent court is hereby set aside and the petitioner is discharged.

Thompson, J., and Plummer, J., concurred.