## In re SCHULMAN et al.

(District Court, S. D. New York. January 19, 1909.)

BANKRUPTCY (§ 241*) — LOSS OF ASSETS — EXAMINATION OF BANKRUPT — CONTEMPT.

Where there was an apparent loss of assets amounting to $61,000 during the last six months of a bankrupt's business, which on his examination he failed to explain, and his whole examination indicated duplicity, intentional evasion, and refusal to disclose facts connected with the bankruptcy under the pretense of ignorance and stupidity, he was guilty of contempt and subject to imprisonment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 241.*]

In Bankruptcy.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

James, Schell & Elkus, for trustee.
Morris Meyers, for bankrupt Samuel Schulman.

HOLT, District Judge. This is a motion to punish the bankrupt Samuel Schulman for contempt. In January, 1908, the bankrupt made a written financial statement that his assets exceeded his liabilities in the sum of $42,326. He was put in bankruptcy in July, 1908, and his schedules show that at that time his liabilities exceeded his assets in the sum of $19,000, showing an apparent loss in six months of $61,000. The bankrupt testified that his statement showing a net worth in January of about $42,000 was correct. He verified the schedules, and he testified that he had stock on hand at the time of the failure worth about $10,000. On his examination before the referee he was asked, in great detail and in repeated forms, to explain how he made the apparent loss of $61,000 during six months' business, and what had become of his stock of goods. Substantially no explanation was made. At first his sole statement was that he had lost money, without any statement of how he had lost it. Finally, at the very end of the examination, in answer to his own counsel, he said:

"We sold goods to people, the panic came, and there has been a lot of goods returned, and the goods that were returned had to be sold at a low figure."

All efforts to get him to explain what the transactions were in which money was lost, what goods had been returned, and what goods returned were sold at a low figure entirely failed. To a great many of the questions he replied with the question, "What do you mean?" and it is apparent that in most of those cases he knew what was meant. Although he testified that he could not read or write English, and although it is true that he did not speak English very well, he could understand it and speak it sufficiently for all practical purposes. Whenever his own counsel asked him questions, he comprehended them well enough. On very numerous occasions his reply was the stock answer of the prevaricator, "I don't remember," and the whole examination from the beginning to the end is a perfectly transparent case of duplicity, intentional evasion, and refusal to make any explanation of the facts connected with his bankruptcy under the pretense of ignorance and stupidity. The whole attitude of the bankrupt in the entire proceeding is that of contempt of this court and of its authority, and a deliberate determination to conceal from his creditors all the material facts within his knowledge relating to the affairs of his firm.

The bankrupt is adjudged guilty of contempt, and, as a punishment for such contempt, is ordered to be committed to Ludlow Street Jail for six months. If, after five days of such imprisonment, he wishes to have an opportunity to be again examined, the marshal will be directed to take him again before the referee for re-examination, and if, upon such examination, he shall make a full and satisfactory disclosure of all the material facts of the case within his knowledge, an application may be made to the court for a discharge from further imprisonment; but if he declines to submit to such re-examination,

or if, having applied for it, he is guilty of the same evasion and duplicity which characterize the one already had, such imprisonment shall continue for the term already stated.