---

In re VYSE et al.

(District Court, E. D. New York. February 20, 1915.)

1. BANKRUPTCY ⊕136—ORDERING PAYMENT OF MONEY TO TRUSTEE—PERSONS LIABLE.

Where one of the bankrupt members of a bankrupt firm was a mere clerk, received what was equivalent to wages, had nothing to do with the real conduct of the business, and kept in his possession none of the proceeds of a sale shortly before bankruptcy, but actually turned over all of the money received from such sale to his partner, and never knew what became of it thereafter, he could not be required to pay such money to the trustee, on the theory that it was still within the control of the bankrupts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ⊕136.]

2. BANKRUPTCY ⊕136—ORDERING PAYMENT OF MONEY TO TRUSTEE—MONEY DELIVERED TO THIRD PERSON.

Where a bankrupt had actually delivered money to his sister, the trustee could not proceed directly against him to require such money to be turned over to the trustee, even though the claim that the money was so delivered in payment of a debt was preposterous and unworthy of belief, as the sister had a right to be heard in defense of her own possession.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ⊕136.]

3. BANKRUPTCY ⊕136—ORDERING PAYMENT OF MONEY TO TRUSTEE—MONEY DELIVERED TO THIRD PERSON.

Where, though a bankrupt did not account satisfactorily for money which he claimed to have delivered to K., the evidence indicated that the money was either turned over to K. for some purpose or squandered in connection with K., he accounted sufficiently therefor so far as a proceeding against him to require the money to be turned over to the trustee was concerned; and though K.'s assumption of responsibility for taking the money did not prevent a finding that the bankrupt gave it to him for some fraudulent purpose and was liable for his acts, it was necessary to proceed against him and the bankrupt at the same time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ⊕136.]

4. BANKRUPTCY ⊕136—ORDERING PAYMENT OF MONEY TO TRUSTEE—ACCOUNTING BY BANKRUPT.

A bankrupt did not sufficiently account for several thousand dollars in his possession prior to bankruptcy, so as to prevent an order requiring him to pay it to the trustee, by admitting that he gambled with everything upon which he could lay his hands.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ⊕136.]

5. BANKRUPTCY ⊕136—ORDERING PAYMENT OF MONEY—ORDER—CONFORMITY TO ISSUES.

Where, in a proceeding by a trustee to require a bankrupt to pay over to him certain sums of money which were found to be no longer under his control, the evidence disclosed a failure to account for a larger amount,

and all the proceedings were thereafter conducted as if the bankrupt was charged with the secretion of the entire amount, and the issues were contested with reference to the entire balance unaccounted for, rather than any particular items, an order requiring the bankrupt to pay to the trustee money unaccounted for, other than the items sought to be recovered when the proceeding was instituted, was not unauthorized.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☜136.]

In Bankruptcy. In the matter of Henry F. Vyse and another, individually and as members of Henry F. Vyse & Co., and the copartnership of Henry F. Vyse & Co., bankrupts. On motion to confirm a report of the special commissioner on an application to require the bankrupt to turn over funds to the trustee. Ordered in accordance with the opinion.

Wing & Wing, of New York City, for trustee.
Smith, Doughty & Weynberg, of Brooklyn, N. Y., for bankrupts.

CHATFIELD, District Judge. The trustee has moved to confirm the report of the special commissioner, who has found that the bankrupts should pay over to the trustee the sum of $12,940.62, which he has found was unaccounted for by the bankrupts from the funds in their possession before the filing of the petition in bankruptcy, and in his opinion is still within their control, or has been disposed of by them in a way which they have not explained.

This conclusion was reported by the referee upon the 31st of August, 1914, and, because of the situation presented, was referred back to the special commissioner upon a memorandum filed upon the 14th day of October, 1914, by Judge Veeder. By this memorandum the special commissioner was directed to prepare another and complete report, in which the conclusions of law and fact were to be clearly defined with reference to the evidence upon which they are based.

In accordance with this memorandum the special commissioner has now reported to the court separate findings of fact and conclusions of law, as a statement of the matters and opinions which he attempted in his previous report to include in a general decision. These reports are based upon considerable testimony taken before the commissioner, and also upon an examination under section 21a, and the situation is not substantially changed by the detailed findings of fact and of law, for the same questions now arise as were originally presented upon the pleadings, testimony, and report which was returned for further findings.

It appears that the bankrupts are two men who were in partnership and who conducted ostensibly a produce business, in the course of which they received, a short time before bankruptcy, and when plainly insolvent, certain car loads of grapes, for which they have not paid, and the proceeds of which, some $9,000, were immediately used as so much ready cash.

[1] One of the partners, Edward A. Fallon, was a mere clerk, and the record from the outset shows that he received what was equivalent to wages, had nothing to do with the real conduct of the business, kept in his possession none of the proceeds, and actually turned all

of the moneys in question, which were received from the sale of produce, over to his partner, and never knew what became of them thereafter. There is no basis in the papers for accusing him of wrongful possession of the assets, or failure to account for the same (Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451), unless in the criminal court or as to a discharge.

His partner, on the other hand, was admittedly gambling on an extensive scale, particularly in that form of this mania which is called in the public press "playing the races." Such form of gambling was throughout part of the period illegal, and he operated through commissioners, who took his money and apparently usually reported it as lost.

[2] The various items of expenditure which have been traced—that is, as to which some reference has been ascertained from the books—reduce the amount unaccounted for to the sum which has been found by the commissioner, viz., $12,940.62, and as to this the bankrupt Vyse's sole explanation is that he must have spent it—that is, squandered it or lost it—by gambling, with the exception of two distinct items. The sum of $2,875 he testifies he paid to his sister in return for some money previously advanced by her out of a considerable sum which she had received from the estate of a relative. She has testified in corroboration, and there is nothing to indicate whether the money could be recovered from her, or that she is not good therefor, if her claim that this was paid to her as a debt does not prevent its recovery by the estate.

The trustee urges that the bankrupt should account for this fund, upon the theory that the testimony of the bankrupt and of his sister that he paid this money to her as a debt is unbelievable, and the commissioner has found that he does not believe in the existence of the debt and the payment of the money therefor. He has, on the contrary, found that the bankrupt did pay this money for some purpose to his sister, and she therefore is in the position of either having it in her possession, or having received and held it, under a claim of title; and even if the trustee seeks to show that her claim is preposterous, and so plainly colorable as not to be worthy of belief, he cannot, under the cases, proceed directly against the bankrupt, for the party admitting the possession of the money has a right to be heard in defense of her own possession.

In the case of In re Friedman et al., 161 Fed. 260, 88 C. C. A. 306, which is relied upon by the trustee, all the parties were before the court, and the finding was against the contention of them all. In re Siegel (D. C.) 164 Fed. 559. If a claim of title is fairly interposed, then a plenary suit is necessary (even if that claim of title be ever so poorly founded). In re Bacon, 210 Fed. 129, at page 134, 126 C. C. A. 643. Certainly, if the bankrupt shows that he has turned over property to some one who makes a claim of title, this must be held as an accounting by him, unless it can be made to appear upon the entire record that the bankrupt is merely concealing the property, that no claim of title is even fairly presented, and that no transfer ever occurred. In the present case the trustee has not proceeded against the sister, either

summarily or by plenary action, and she may be entirely good for the money.

[3] As to the $3,000, it seems that the bankrupt Vyse, during the days in which he was gambling extensively, says that he turned over to one Kirby, of Sheepshead Bay, $1,700, and then $1,300, within a few days of each other, only a short time before bankruptcy, and only a week before he consulted a lawyer with reference thereto. The ostensible reason for turning the money over was that this man Kirby might invest in some motor boats which were to be sold at a bargain. But there is no satisfactory evidence upon the part of either the bankrupt or Kirby that this reason was then advanced seriously by Kirby, or taken seriously by the bankrupt. In fact, all the indications are that the money was given to Kirby for some kind of gambling outlay, or else to conceal it for the bankrupt, and some of it was used by him in gambling upon horse racing and promptly lost.

The bankrupt and Kirby now wish the court to believe that the bankrupt placed credence in Kirby's proposition that he could make a valuable investment in motor boats, and then within a few days thereafter made another loan for the same purpose, without inquiring as to the result of the first loan. For these amounts, however, Kirby actually gave the bankrupt a promissory note, and the trustee actually started suit in the state court upon this promissory note, but immediately withdrew the action and changed to this proceeding, in which it is alleged that this promissory note is but a cover to protect the bankrupt in securing for his own purposes the $3,000 which he says he loaned to Kirby.

Some elements of the story are inherently preposterous. But, again, Kirby tried to support the preposterous and ridiculous story, and the trustee seeks (by indicating the apparent falsehood on the part of both men as to the purpose for which the money was to be used) to obtain a finding that all statements with respect to the money should therefore be taken as false, and that the bankrupt has failed to explain what became of this sum.

If the conclusion were merely that the bankrupt had not given a satisfactory account of how the money was used, and if it were any indication that either he or any one else had the money, an order to turn it over would be proper; but the presumption and evidence is much stronger that the money was either turned over to Kirby and improperly used, or that in some way, in connection with Kirby, it was squandered, than that the bankrupt has failed to account therefor to the extent that he should be presumed to be still able to restore it to his estate. The fact that Kirby assumes the responsibility for actually taking the money, and is in a position to be sued therefor, does not prevent the finding that the bankrupt gave it to him for some fraudulent purpose, and is liable for his acts. But in order to find that Kirby is carefully safeguarding it for the bankrupt, when the situation under which both were throwing away money is taken into account, it is necessary to proceed against him and the bankrupt at the same time, as Kirby's possession thereof and claim of title thereto is an accounting by the bankrupt so far as the present motion to turn over is concerned. Boyd v. Glucklich, supra.

[4] With reference to the balance of the fund, however, viz., the sum of $7,065.62, there is no evidence at all to explain what has become of the money, except the bankrupt's willingness to admit that he gambled with everything upon which he could lay his hands. Such explanations have never found favor as a complete accounting for the money involved. It is evident that a person spending money in this way would lose track of some part, but he should not be excused from being held to account at all. In re De Gottardi (D. C.) 114 Fed. 328; In re Frankfort (D. C.) 144 Fed. 721; In re Weinreb, 146 Fed. 243, 76 C. C. A. 609; In re Schulman (D. C.) 167 Fed. 237, affirmed 177 Fed. 191, 101 C. C. A. 361; In re Nisenson (D. C.) 182 Fed. 912.

[5] The trustee instituted this proceeding to recover an amount of $5,875, which indicates the sum of the items of $2,875 paid to the sister and the $3,000 loaned to Kirby. In attempting to prove the charge a larger amount was shown. Since that balance appeared upon the record, all the proceedings have been conducted as if the bankrupt were charged with the secretion of the entire amount, and, as the matter has finally been reported by the special commissioner, the issues have been contested with reference to the balance unaccounted for in the firm's transactions, rather than any particular items making up the total set forth in the petition. The bankrupts now object to a determination that they should be held to account for anything other than the moneys paid to the sister and loaned to Kirby, but such a contention is not supported by authority or law.

The bankrupt Vyse should be ordered to pay over to the trustee the sum of $7,065.62, which he has disposed of in fraud of his creditors, and which he does not show is out of his control. He should also be held for full responsibility for the fraudulent loan to Kirby, unless Kirby can meet the responsibility for its disposition, and Vyse should be committed unless and until he can show some proper reason for release from such commitment, by compliance with the order to turn over or by a proper accounting.