### In re CHAVKIN et al.

(Circuit Court of Appeals, Second Circuit. January 16, 1918.)

#### No. 93.

1. BANKRUPTCY ⟳303(2)—PROCEEDING BY TRUSTEE TO REQUIRE SURRENDER OF PROPERTY—EVIDENCE—FINANCIAL STATEMENT.

On the hearing of the petition of a trustee to require bankrupts, who were partners, to turn over property not scheduled, a written financial statement, signed by one of the firm, made a short time before the bankruptcy to a creditor as a basis of credit, and purporting to show a surplus of assets over liabilities, is admissible in evidence, and, although not conclusive, may be persuasive.

2. BANKRUPTCY ⟳303(1)—PROCEEDING TO REQUIRE BANKRUPT TO TURN OVER PROPERTY—BURDEN OF PROOF.

When a trustee lays a foundation by any competent evidence, including the claims of bankrupts themselves, that they had unscheduled assets within a reasonable time before the filing of the petition, the bankrupts must then account for the property, or rebut the trustee's prima facie case by credible evidence.

3. BANKRUPTCY ⊛303(3)—ORDER REQUIRING BANKRUPTS TO TURN OVER PROPERTY—PETITION TO REVIEW.

An order requiring bankrupts to turn over property *held* supported by evidence, on a petition to revise such order in matter of law.

Petition to Revise Order of the District Court of the United States for the Eastern District of New York.

In the matter of Joseph Chavkin, Barnet Chavkin, Nathan Chavkin, David Chavkin, and Benjamin Chavkin, trading as the North Central Knitting Mills and as R. Chavkin & Sons, bankrupts. On petition of bankrupts to review an order of the District Court requiring them to turn over property. Affirmed.

The partners in the bankrupt firm were five brothers, and a sister was the bookkeeper. After an examination under section 21a of the Bankruptcy Act (Comp. St. 1916, § 9605), and at the first meeting of creditors, the trustee petitioned for an order against the bankrupts requiring them to pay over to him property, or the value thereof, neither scheduled nor surrendered. The evidence for the trustee in this proceeding consisted of (in part) a "financial statement," made March 25, 1916, signed by the bankrupt Joseph Chavkin, showing a net surplus of firm assets of over $60,000 and certified as "a true and correct showing of the present financial condition of" the bankrupts, made to a creditor "for the purpose of purchasing goods and for establishing a continuing line of credit" with said creditor. The trustee also introduced in evidence the examination, especially of Joseph Chavkin, under section 21a and at the first meeting of creditors. He also called said Joseph as a witness in this proceeding. The District Court entered an order requiring the bankrupt to surrender substantially what the financial statement aforesaid declared them to be worth, less what had been turned over to the trustee when petition was filed against them, about a month after the date of said statement. To this order the bankrupts filed this petition to revise.

Myers, Kutner & Schuhmann, of New York City (Maurice Lefkort, of New York City, of counsel), for bankrupt.

Samuel C. Duberstein, of New York City, for trustee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). This cause having been brought before us by petition to revise, our duties are limited to inquiring whether any error of law was committed below. There are but two points to be considered, viz. petitioner's assertions (1) that it was error to admit in evidence the financial statement above referred to, and (2) that there was no evidence upon which the court could ground the order complained of.

[1] 1. That a statement of this kind is competent, and may be persuasive evidence, against a bankrupt in proceedings of this nature, was specifically held in Re Loeb, 232 Fed. 601, 146 C. C. A. 559. The use in what are commonly known as "turn-over proceedings" of these "financial statements" has long been common and well known. They are not conclusive, but it is difficult for us to understand how anything can be more persuasive, as against the person making it, than a solemn statement of financial worth made to induce credit.

[2] 2. It seems to be thought by the petitioners that, because all the bankrupts, except Joseph Chavkin, swore that their business duties

gave them no acquaintance whatever with the firm's financial condition, and Joseph himself, when called as a witness in this proceeding, refused to answer substantially every question put to him on the ground that such answer might incriminate or degrade him, therefore there was no evidence, other than said financial statement, upon which to ground the order complained of.

Without expressing any opinion on the probative value of the testimony or affidavits of a man who even declined to recognize his signature to the schedules in bankruptcy (on the ground above stated), we find in the record evidence obtained upon examination under section 21a and largely from the sister bookkeeper, of the substantial correctness of said financial statement. At all events there was certainly some evidence, and its comparative value is not for us to decide. There was jurisdiction in the court to make the order. In re Schlesinger, 102 Fed. 117, 42 C. C. A. 207. The trustee lays a foundation when he shows by any competent evidence, including the claims or assertions of the bankrupts themselves, that they had unscheduled property a reasonable time before petition filed; the bankrupt must then account for said property, or otherwise rebut the trustee's prima facie case by credible testimony. In re Weinreb, 146 Fed. 243, 76 C. C. A. 609; In re D. Levy & Co., 142 Fed. 442, 73 C. C. A. 558; In re Graning, 229 Fed. 370, 143 C. C. A. 490, Ann. Cas. 1917B, 1094.

[3] These bankrupts seem to have made no attempt to comply with this rule; but, assuming that there was conflicting evidence presented to the court, the question thereby presented was of fact, and not reviewable in a proceeding of this nature.

It may be added that petitioners seem to think that this is a contempt proceeding, because in the same order which directed the payment of money to the trustee the bankrupts were called on to show cause why they should not be punished for contempt, if they did not make the required payment. Such, however, is not the case. There has been no punishment for contempt, and no order adjudging contempt. We have nothing before us but the legal propriety of the "turn-over" order.

Order affirmed, with costs.