### In re H. MAGEN CO., Inc.

### Petition of MAGEN.

(Circuit Court of Appeals, Second Circuit. December 14, 1925.)

No. 34.

**1. Bankruptcy ⊜136(2)—Showing of large purchases preceding bankruptcy and inability to account for goods warrants inference of concealment.**

Showing that bankrupt purchased large amounts of property shortly before bankruptcy, and has only nominal amount in his possession at time of bankruptcy, and is unwilling to explain what he has done with that purchased, warrants inference of concealment.

**2. Bankruptcy ⊜136(2)—Turn-over order warranted, though no definite property found in bankrupt's possession.**

Turn-over order may properly issue, though no definite property or money is found in bankrupt's possession, where proved facts warrant inference that there is a withholding or concealment of assets unaccounted for.

**3. Bankruptcy ⊜136(2)—Evidence held to warrant turn-over order.**

Evidence as to purchases and sales shortly preceding bankruptcy *held* to warrant inference that bankrupt's manager had in his possession or under his control money or property concealed and unaccounted for, warranting turn-over order.

**4. Bankruptcy ⊜136(2)—Property traced to bankrupt's possession and unaccounted for may be presumed under bankrupt's control.**

When property is traced into bankrupt's possession, and he fails to produce or satisfactorily explain what became of it, court may infer that it is still in his possession or under his control, as affects propriety of turn-over order.

**5. Bankruptcy ⊜446—On petition to revise, court's inquiry is limited to matters of law.**

On petition to revise an order, court's inquiry is limited to matters of law.

**6. Bankruptcy ⊜136(2)—When turn-over order is warranted stated.**

Turn-over order should not be granted, except on clear proof that title to property is in trustee, or is part of bankrupt's estate, and that person subject to order at time of bankruptcy and when order was made had possession or control of money or property to be turned over.

Petition to Revise Order of the District Court of the United States for the Eastern District of New York.

In the matter of the bankruptcy of the H. Magen Company, Inc. On petition of Herbert Magen to revise turn-over order of referee, affirmed by District Court. Order affirmed, and petition to revise denied.

See, also, 3 F.(2d) 33.

An involuntary petition in bankruptcy was filed against the above-named bankrupt on February 25, 1924, and an order of adjudication was entered on March 15, 1924.

The trustee of the bankrupt petitioned the court on July 1, 1924, and represented that the bankrupt at that time had in his possession and under his control merchandise belonging to his estate in bankruptcy, to which the trustee was entitled, of the value of $106,531.66. This petition was based on information from reports made by certified public accountants, who examined the books and records of the bankrupt for the receiver pursuant to a court order, and from examinations conducted under section 21a of the Bankruptcy Act (Comp. St. § 9605). The court was asked to enter an order requiring the bankrupt immediately to turn over and deliver to the trustee "merchandise, consisting of yarn, of the value of $106,531.66."

On the presentation of this petition, and an answer denying its allegations, a hearing was had before the referee in bankruptcy, and it resulted in a turn-over order. In a decision rendered on November 25, 1924, the referee said:

"In conclusion, I feel it only proper to say that I am thoroughly convinced that the respondent is not a victim of incomplete bookkeeping or untruthful testimony by others. I believe he planned the entries in his books and records and the alleged sales in such a manner as to afford him an opportunity to cover up property. I believe the amount of such property is at least $60,701.-75. An order may be submitted in conformity with this memorandum."

In a second decision, rendered by him on November 29, 1924, he made certain corrections in his figures, the net result of which was to reduce the amount of the property to be turned over by him from $60,701.75 to $39,299.37. And he concluded his second decision as follows:

"Upon the record, I find that the respondent has failed to explain or account for his failure to turn over to the receiver or trustee cotton and silk yarn to the value of $39,299.-37. I find that he is in possession or control of such merchandise. He must turn over such amount to the trustee. In lieu of the merchandise he may turn over cash in said amount. In conclusion, I feel it only proper to say that I am thoroughly convinced that the respondent is not a victim of incomplete bookkeeping or untruthful testimony by others. I believe he planned the entries in his books and records and the alleged sales in such a manner as to afford him an opportuni-

ty to cover up property. I believe the amount of such property is at least $39,299.-37. An order may be submitted in conformity with this memorandum."

Then the bankrupt petitioned to reopen and reargue the matter. This petition was denied on January 3, 1925, but the referee again reduced the amount to be turned over to the sum of $32,779.74. In his decision on this motion to reopen and reargue he concluded as follows:

"After considering the matter from every angle, I have decided that there is enough doubt upon this subject to credit the respondent with the benefit of this doubt. In other words, although his books fail to show the situation, I find it may nevertheless be true. I must therefore credit the respondent with an additional loss of 12½ cents per pound on 52,157 pounds. This would give a total of $6,519.63; such amount should be deducted from the amount of $39,-299.37 as previously found by me. An order may be submitted herein, denying the motion of the respondent to reopen this hearing, and directing the respondent to turn over to the trustee herein the sum of $32,-779.74."

And an order was entered as follows:

"Ordered and adjudged, that the said respondent, Herbert Magen, within five days after the service upon him of a certified copy of this order, be and he hereby is directed to turn over and deliver to William R. Bayes, the trustee in bankruptcy herein, the said silk and cotton yarn of the value of $32,779.-74, or, at the option of the respondent, in lieu of the said merchandise, to pay to the said trustee, within the said period of five days, the sum of $32,779.74 in cash."

This order was filed on January 13, 1925, in the referee's office and in the office of the clerk of the District Court on January 31, 1925.

On January 22, 1925, the bankrupt petitioned the District Court to review the order. And on March 2, 1925, the District Judge handed down a brief opinion, affirming the referee's order, which concluded as follows:

"The record reveals that a bold and outrageous fraud has been perpetrated."

And on March 9, 1925, the order of the District Judge was filed in the clerk's office. It ordered that:

"The said turn-over order of said referee, dated January 13, 1925, be and the same hereby is in all respects affirmed."

Samuel Evans Maires and Thomas W. Maires, both of Brooklyn (Harrington Putnam, of New York City, of counsel), for petitioner.

Shaine & Weinrib, of New York City (Maurice L. Shaine, of New York City, of counsel), for trustee-respondent.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The present bankrupt corporation appears to have been organized in May, 1920. From that time to February 24, 1924, it was engaged in manufacturing braids, laces and narrow fabrics. During the whole of the period from the date of its organization to February 25, 1924, the date of the bankruptcy, the petitioner was a stockholder in the corporation, was the treasurer and sole manager in control of its business.

The period involved in the turn-over order begins November 1, 1923, and ends February 25, 1924, when the petition in involuntary bankruptcy was filed. The respondent charged petitioner with the bankrupt's purchases of yarn as shown by its books during this period, and credited him with all sales according to the books of the corporation, and also with all merchandise on hand at the time of the bankruptcy.

The testimony adduced before the referee on the application for the turn-over order shows that, without taking into consideration any profits that may have been earned or losses that may have been sustained on such sales, there was an actual deficiency during this period of less than four months, according to the bankrupt's books, of more than $91,798.15. The net purchase of yarn is shown to have been $223,213.02. The sales of yarn were $62,237.85. The sales of manufactured products were $24,184.51. The inventory of merchandise on hand was $131,-414.87. This showed the total credits of $131,414.87, and deducting this sum from the net purchases of yarn, above stated as amounting to $223,213.02, left a deficiency unaccounted for of $91,798.15. And it is to be observed that this result takes no account of the merchandise on hand at the beginning of the period in question. And it is also to be noted that the petitioner did not question the accuracy of the bankrupt's books. On his cross-examination he testified: "I know the books were right."

The management and conduct of the business was in his hands alone. No purchases were placed upon the bankrupt's books unless he personally initiated the bills therefor, and no bills for sales were issued and

duplicates thereof retained as part of the records of the bankrupt unless he placed his O. K. thereon. All purchases of yarn were made by him. All sales were made under his supervision, and the sales of yarn were all made by him personally. He also made the inventory of the merchandise on hand and at dyers at the time of the bankruptcy.

It is interesting that from January 1, 1921, to November 1, 1923, the bankrupt's purchases were about $100,000, or less than one-half of what they were during the four months prior to bankruptcy. In that period, which was really less than four months, the purchases were at least 20 times more than they were during any similar period of the bankrupt's existence, and, as the referee has found, they "were out of all proportion to the needs of the bankrupt's business." The findings are amply justified, for it appears that the sales of manufactured products in this four-months period were only $24,184.-51. The bankrupt paid out for labor in the manufacture of the goods in this same period the sum of $7,715.14, and it also appears that prior to this same period the bankrupt had not sold any yarn, but whatever yarn it used in its business. But during the period under consideration the sales of yarn which this manufacturing corporation made, according to its books, were five times more than the amount of yarn it used in the manufacture of the products it sold.

The sales of yarn may be classified as itemized and unitemized. The itemized sales are those where the grade, poundage and price per pound are disclosed. The unitemized sales are those which do not give the particulars above mentioned, but merely show that "a lot" was sold. And the unitemized sales are subdivided into two parts: One comprises those where the name of the purchaser is disclosed and is known, and the other where the purchaser's name purports to be given, but of whose whereabouts the petitioner, Magen, testified that he knows nothing.

The trustee charges that some of these unitemized sales were fictitious. These "sales" are as follows:

| | |
|---|---|
| Jacob Jeremiah Kasselmanheim.... | $ 5,155.97 |
| Lapedis Lagasowitz .............. | 13,875.30 |
| H. Lapser ...................... | 4,453.41 |
| Total ...................... | $23,484.68 |

The referee found that Magen had not truthfully explained or accounted for the merchandise alleged to have been sold to these three men, and that he had not accounted for other merchandise. The conclu-

sion of the referee was that the bankrupt was not a victim of imperfect bookkeeping, but that he planned the entries in his books and records and the alleged sales so as to enable him to conceal his property, and that the amount of his property which he concealed amounted to $32,779.74. He accordingly entered the order directing him within five days after the service of the order to turn over and deliver to the trustee in bankruptcy the sum of $32,779.74 in cash, or, at his option, silk and cotton yarn of that value; and this order was confirmed by the District Judge, who was satisfied that "a bold and outrageous fraud" had been perpetrated.

[1] If a bankrupt is shown to have purchased large amounts of property within a short period prior to his bankruptcy, and has only a nominal amount in his possession at the time of his bankruptcy, and is unable or unwilling to explain what he has done with it, it is not unreasonable to infer that he has it in concealment. As proof of a fact the law permits inferences from other facts, and there arises a presumption of fact, which is a reasonable and natural inference of the existence of one fact from the proof of some other fact established by direct evidence.

[2] The law relating to turn-over orders is pretty well established in this circuit. In 1900 this court decided In re Schlesinger, 102 F. 117, 42 C. C. A. 207. In that case the referee found no definite property or money in the possession of the bankrupt. He therefore refused to enter a turn-over order. The District Court reversed his decision, inasmuch as it appeared that upwards of $10,000 had been unaccounted for by the bankrupt. It therefore held that it was still in his possession or control. But to avoid any question of doubt the court fixed the amount to be turned over at $6,500. The case was brought into this court upon a petition to review and the order of the District Court was affirmed. Judge Shipman, writing for the court, said:

"If we had power to review the correctness of the finding that the testimony was such as to satisfy one beyond a reasonable doubt that the money was in the possession or under the control of the bankrupt, and mindful of the importance of observing caution in the investigation, we should have no hesitation in affirming the finding of fact. It is not denied that clause 13 of section 2 of the Bankrupt Act [Comp. St. § 9586] authorizes the court of bankruptcy to 'enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or

imprisonment, or fine and imprisonment,' and that disobedience of a lawful order of a referee is punishable by the judge as for a contempt committed before the court of bankruptcy; but it is contended that disobedience of an order to the bankrupt to pay or deliver a sum of money in his possession to his trustee cannot be punished by proceedings in contempt, because the order is for the payment of a debt, and imprisonment for debt has been abolished in the state of New York, and by section 990 of the Revised Statutes [Comp. St. § 1636] no person can be imprisoned for debt by process issuing from the courts of the United States in a state where by its laws imprisonment for debt has been abolished."

The court disposed of the objection arising from the fact that imprisonment for debt had been abolished by declaring that the order was not for the payment of a debt, but for the delivery by the bankrupt of the assets of his estate to his trustee in bankruptcy. "He was not indebted to the trustee. The money was a part of his assets and estate, which had by operation of law become vested in the trustee."

In 1905 this court decided In re Levy, 142 F. 442, 73 C. C. A. 558. The question came up on petition to review a turn-over order. At the time of the filing of the involuntary petition in bankruptcy it appeared from the books of the bankrupts that there should have been on hand at the time the petition was filed a balance in goods or cash of $18,921.87. The value of the goods on hand amounted to only $6,000, and the value of goods unaccounted for was $12,-921.87. The referee declined to order this amount turned over to the trustee, holding that the showing on the books at most raised an inference that the property was in the hands of the bankrupts. The District Judge refused to confirm the order and said:

"The question is whether it is sufficient for the bankrupts to state that they have not the property. If they have not the property, they should tell what they did with it. If they cannot do this, the court would be justified in finding that they still had it. Their books, kept for the very purpose of showing what they have or have not, state that they have this balance. The record is their own. If it is not complete, let them complete it. Their own written books, to the effect that they have $12,921.87, is better than their generalization that they have none of it. If it were sufficient for a bankrupt to deny generally, in the face of his own books, the suppression of assets would be un-

impeded. Another opportunity should be given the bankrupts to make the necessary explanation, and point out with some approximate accuracy the disposition of so large an amount of goods within so short a space of time."

When the matter went back to the referee the bankrupts failed to make any explanation of what they had done with the property. A turn-over order was made by the referee, the District Court approved, and this court affirmed.

In 1906, in Re Weinreb, 146 F. 243, 76 C. C. A. 609, there was a shortage of assets of $60,000 for which the bankrupts did not satisfactorily account. On their examination they were asked as to certain sums they had drawn out of the bank in cash and which aggregated $18,200. At first they refused to answer questions concerning it, but subsequently gave a story in which they undertook to account for it. District Judge Holt considered the story as extremely improbable. He said: "It is precisely the kind of story which bankrupts would tell, who had been engaged in the diamond business, and had been planning . a fraudulent bankruptcy, and had drawn $18,000 in cash just before their bankruptcy, for the purpose of concealing it from their creditors. I cannot avoid the conclusion that their story is an entire fabrication, and that the bankrupts have this money concealed from their creditors, and that they should be ordered to pay it to the trustee." And he entered an order directing them to turn over to the trustee $18,200, which they had drawn out of the bank in cash between July 11th and July 20th. The matter came into this court on a petition to revise, and it was affirmed.

In 1909 the court decided In re Stavrahn, 174 F. 330, 98 C. C. A. 202, 20 Ann. Cas. 888. In that case the doctrine is stated by Judge Lacombe that, if it is shown that the bankrupt was in the actual possession of a particular sum of money a few months before the turn-over order, it was incumbent on him to give some reasonable explanation as to why it was that he did not turn it over in compliance with the order requiring him so to do. In that case his sole averment was: "That the reason your deponent has not turned over said sum is because he has no such sum in his possession or under his control, directly or indirectly, and has no means whatsoever of obtaining said sum of money." And this court said that his averment "is too bald and indefinite to have any persuasive force."

In 1912 the court decided In re Weber,

200 F. 404, 118 C. C. A. 556. In that case the referee found that the director of a bankrupt corporation was concealing $10,000 and ordered him to pay over that amount to the trustee within five days. No attempt was made to have that order reviewed, and as the director failed to comply with the order contempt proceedings were instituted, in which the director filed an affidavit only averring that at no time at or since the filing of the petition in bankruptcy did he have any goods or money of the bankrupts under his control, and that he had never secreted or disposed of any of the bankrupt's assets, and had absolutely no money or property with which to comply with the referee's order. Judge Lacombe, writing for the court, said:

"It [the finding of the referee from which no appeal was taken] established prima facie that Weber had at one time $10,000, which he was secreting from the estate; and his bare denial, without corroborative proof, was insufficient to overcome such prima facie case. Upon the application to punish for contempt he made no explanation as to how or why it was that this particular sum had disappeared, merely denying that he ever had it. His statement that he had no money when the proceeding for contempt was instituted, without some such explanation, was insufficient, and the judge quite properly held him on contempt for not paying it over. To excuse disobedience of the order by such general denial would make it easy to evade the requirements of the Bankrupt Act [Comp. St. §§ 9585–9656]."

In 1918 in Re Chavkin, 249 F. 342, 161 C. C. A. 350, this court, speaking through Judge Hough, said: In a proceeding requiring the bankrupts to pay over property the trustee establishes a prima facie case by showing "by any competent evidence, including the claims or assertions of the bankrupts themselves, that they had unscheduled property a reasonable time before petition filed; the bankrupt must then account for said property, or otherwise rebut the trustee's prima facie case by credible testimony."

Our attention is called to In re Haring (D. C.) 193 F. 168, affirmed sub nom. In re Holden, 203 F. 229, 121 C. C. A. 435, and that a writ of certiorari was denied 229 U. S. 621, 33 S. Ct. 1049, 57 L. Ed. 1355. In that case the referee found that the bankrupt had failed "to account for property, or money, or both, of the value of $4,000, and that such amount belongs to this estate and is withheld from the trustee thereof." And he thereupon entered an order directing that $4,000 be turned over to the trustee. The bankrupt made no attempt to review the order, and a contempt proceeding followed. The District Judge held that the failure to appeal from a turn-over order makes the order conclusive, unless the bankrupt gives an adequate explanation of what has become of the money or property *since* the order was made. And he refused to grant an order of commitment and said: "Here no money which has not been accounted for has been directly and reliably traced to the possession of the bankrupt and the order of the referee required him to pay to the trustee the sum of $4,000 in money. There is no positive testimony that he had in his possession at the time of his failure any part of the stock of goods except those located in the store and turned over to the trustee. Indeed, the theory of the trustee is not that the bankrupt has goods in his possession, but rather that he has converted goods into cash and has the money in his possession." The Circuit Court of Appeals, in the Sixth Circuit, affirmed the District Judge. In re Holden, 203 F. 229, 121 C. C. A. 435.

But in the instant case the turn-over order under review does not require the petitioner to turn over $32,779.74 in money. It requires him to turn over silk and cotton yarn of that value, or, at his option, in lieu thereof "the sum of $32,779.74 in cash." And this the referee based on his finding that the petitioner "had and still has in his possession or under his control assets belonging to this estate in bankruptcy herein, consisting of silk and cotton yarn of the value of $32,779.74, which he did and still is concealing from the said trustee in bankruptcy." And this order the District Judge, as before stated, being of a similar conviction as to the facts, affirmed.

Our attention is also called to In re Redbord, 3 F.(2d) 793, 794, where this court, speaking through the present writer, said: "To warrant the order to turn over the money, it must appear not only that the money to be turned over is part of the Bankrupt's estate, but that the money is in his possession or under his control at the time the order to turn it over is made."

[3] We do not doubt the correctness of the statement quoted, and it is evident that the referee and the District Judge were satisfied that what the respondent is directed to turn over in the order sought to be revised is part of the bankrupt's estate. If there is in this record no evidence upon which that conclusion can be based it would be the duty of this

court to reverse the order. But this court thinks that there is such evidence. And if it so thinks there is nothing for us to do but to affirm the order.

[4] In United States v. Moore, 294 F. 852, 856, this court, speaking of an order punishing for contempt one who had failed to comply with a turn-over order, said that "the court should be satisfied of the present ability of the bankrupt to comply with it." That, too, is undoubtedly true. But it is not to be overlooked that when the property is traced into the bankrupt's possession and he fails to produce it, or satisfactorily to explain what became of it, the presumption is reasonable, and the court may infer that it still is in his possession or under his control.

[5] As this case is here on petition to revise the court's duty is confined to inquiring whether any error of law was committed in the court below in affirming the turn-over order. If there was no evidence upon which the order could be based this court's duty is plain and the order must be reversed. But on petition to revise the court is limited to matters of law. The facts are for the District Court. This court will not look further into the facts as found than to ascertain whether they are sustained by any substantial evidence. It is certain that in this case there was competent evidence from which the referee and the District Judge were entitled to find that the petitioner had and still has in his possession, or under his control, assets belonging to the estate in bankruptcy, and being convinced of that fact we must hold that the turn-over order was legally made.

[6] We need not set forth any more fully than we have done what the evidence is. And from what has been already said it sufficiently appears that the inference which was drawn from that evidence is one which the law recognizes and upholds. The petitioner has had the benefit in this court of learned, able and distinguished counsel. He seems to us to have left nothing unsaid which could be fairly said on the petitioner's behalf. We have carefully examined the record. And we fully agree with the petitioner's counsel that a turn-over order should not be granted, except upon the following conditions:

(1) Clear proof that the title to the property sought is in the trustee, or is part of the bankrupt estate.

(2) That the bankrupt, or the person directed by such order, at the date of the bankruptcy, and when the order is made, had in his possession or control, the money or property to be turned over, which had been kept and concealed from the trustee.

(3) Unscheduled property traced to one, who received it before the filing of the bankruptcy petition, may be presumed to continue in such possession, until a credible explanation is made, showing what has become of such property.

The sole difficulty in this case is that in the opinion of the court below this petitioner has not given a credible explanation of what has become of the property which is a part of the bankrupt estate, and which is shown to have been in the petitioner's possession or under his control.

The order is affirmed, and the petition to revise is denied.