**In re ZUCKOFF.**

District Court, S. D. New York.

April 7, 1942.

Jacob Meadow, of New York City, for trustee.

Kramer & Galgano, of New York City, for respondent.

RIFKIND, District Judge.

The bankrupt commenced business in December, 1940. He discontinued his busi-

ness on April 23, 1941. On June 11, 1941, he was adjudicated a bankrupt; on July 1, following, the petitioner duly qualified as trustee in bankruptcy.

On April 23, 1941, the bankrupt drew on his bank account, at the Sterling National Bank, the entire balance standing to his credit, to wit, $7,430. Of this amount $6,200 is adequately accounted for. The trustee's petition, which has been denied by the referee by an order which is the subject of this review, sought a turn-over of the difference, namely, $1,230. It is charged that the bankrupt retained and concealed that amount. The trustee further charged that the bankrupt had similarly retained and concealed twenty Persian fur skins and two fur coats.

The referee has denied the trustee's petition on the ground that "the evidence shows that he hasn't in his possession any furs or proceeds thereof".

The general principles governing an application for a turn-over order are those stated by the Circuit Court of Appeals for this Circuit in Re H. Magen Co., Inc., 2 Cir., 1925, 10 F.2d 91, 96, where the court said:

"And we fully agree with the petitioner's counsel that a turn-over order should not be granted, except upon the following conditions:

"(1) Clear proof that the title to the property sought is in the trustee, or is part of the bankrupt estate.

"(2) That the bankrupt, or the person directed by such order, at the date of the bankruptcy, and when the order is made, had in his possession or control, the money or property to be turned over, which had been kept and concealed from the trustee.

"(3) Unscheduled property traced to one, who received it before the filing of the bankruptcy petition, may be presumed to continue in such possession, until a credible explanation is made, showing what has become of such property."

In the instant case it is clear that the several items embraced in the petition for a turn-over order were traced to the bankrupt's possession on the eve of the bankruptcy. And the applicable law is equally clear that when "property is traced into the bankrupt's possession and he fails to produce it, or satisfactorily to explain what became of it, the presumption is reasonable, and the court may infer that it still is in his possession or under his control." Id.

The question, therefore, is whether the bankrupt has satisfactorily explained the disposition of the property.

The bankrupt testified that he gave $250 to his parents, $500 to his wife and that the balance he lost in gambling or spent in entertainment. No corroborative evidence of the gambling losses was given by anyone. The bankrupt could not state the last names of the gamblers with whom he played. He could not locate them so that they might be called to testify. This kind of explanation is no explanation at all. To accept such a story is to put a premium on perjury. In Matter of Esterson, D.C. S.D.N.Y.1925, 6 A.B.R.,N.S., 270, 272, Augustus N. Hand, D. J., commented on a similar set of facts: "The failure to identify the names and addresses of the gamblers is a customary accompaniment of gambling stories of this kind."

The expenditures at night clubs are accompanied by the same anonymity as to guests and uncertainty as to dates and amounts. See Matter of Goldstein, D. C.E.D.N.Y.1929, 16 A.B.R.,N.S., 602.

The record does not even disclose any evidence which would overcome the natural assumption that a business man obliged to support his wife, two children and his parents, who has just stripped himself of all his assets, would not be likely to be found spending considerable sums in expensive places of amusement.

The explanation vouchsafed by the bankrupt for the non-production of the twenty Persian skins which had been traced to him is that he left them at his place of business when he abandoned it on April 23, 1941. Two other tenants who shared the bankrupt's place of business denied ever having seen the skins. Inconsistencies in the bankrupt's testimony tend to rob his explanation of any degree of credibility. Thus he first told the accountant for the creditors that he had no merchandise on hand. Subsequently, when the disposition of the skins was inquired about specifically he said that he had left them in his business premises. Furthermore, an inventory made by the bankrupt's own representatives failed to list the skins but the bankrupt made no comment on the omission of the skins when the inventory was shown to him. In view of the fact that the skins represented a very substantial item in relation to the estate, the unsupported statement of the bankrupt that he left them

unguarded and that he never returned to retrieve them cannot be accepted as a satisfactory explanation.

The explanation of the disposition of the two fur coats leaves much to be desired. However, the referee who heard the witnesses found in favor of the bankrupt. There is evidence to sustain the finding. The trustee has failed with respect to this item to meet the rigid test for a turn-over order as laid down in Re H. Magen Co., Inc., supra. See also In re Maki, D.C.W.D.Mich., N.D., 1925, 1926, 14 F.2d 626; In re Goldman, 1 Cir., 1932, 62 F.2d 421; In re Schoenberg, 2 Cir., 1934, 70 F.2d 321; In re Pinsky-Lapin & Co., Inc., 2 Cir., 1938, 98 F.2d 776.

The bankrupt should be ordered to turn over $480 and the twenty Persian skins within ten days from notice of entry of order hereon. Settle order on notice.