[Civ. No. 2351.   Third Appellate District.—August 23, 1921.]

## S. E. METZLER et al., Petitioners, v. SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent.

## In the Matter of the Application of S. E. METZLER et al. for a Writ of Habeas Corpus.

[1] JURISDICTION — CERTIORARI — HABEAS CORPUS. — The sole question which may be determined, either upon *habeas corpus* or upon a writ of review, is that of jurisdiction, and if it be found in either case that the court whose action or judgment is thus attacked had jurisdiction to hear and determine the matter, the writ must be discharged, although it may appear upon the record that the court, in passing upon and deciding the matter, had committed some errors of law.

[2] ID.—COMMISSION OF CONTEMPT IN PRESENCE OF COURT—POWER TO PUNISH—NECESSITY FOR AFFIDAVITS.—Under section 1211 of the Code of Civil Procedure, while a contempt committed in the immediate view or presence of the court may be summarily punished—that is to say, in such cases no formal charge or proceeding is requisite to start in motion the court's jurisdiction or power to act in the premises—where the alleged contempt is constructive or committed out of the view or immediate presence of the court, the court's jurisdiction to punish for a contempt so committed cannot operate or be put in motion in the absence of the filing of a formal charge, duly verified, or, in other words, in the absence of a filing of an affidavit reciting the facts constituting the alleged contempt.

[3] ID.—SUBPOENAING OF WITNESSES—CONTEMPT—COMPLAINT ESSENTIAL.—The act of petitioners in subpoenaing witnesses to be present in court in a proceeding initiated for the purpose of adjudging a minor a ward of the juvenile court under certain provisions of the juvenile court law, after it had been stipulated by petitioners, as counsel for said minor, that the court might make an order adjudging said minor a ward of said court, having been committed outside the immediate view and presence of the court, the filing of an affidavit or affidavits or something in the nature of a verified complaint, charging facts clearly disclosing that the contempt claimed to have been committed, was essential to give the court jurisdiction to adjudge petitioners guilty of contempt.

APPLICATION for a Writ of Certiorari to review an order of the Superior Court of Humboldt County, and Denver Sevier, Judge thereof, adjudging petitioners guilty of contempt.   Order annulled.

The facts are stated in the opinion of the court.

Metzler & Mitchell and V. A. McGeorge for Petitioners.

Arthur W. Hill, District Attorney, and J. J. Cairns, Assistant District Attorney, for Respondent.

HART, J.—The petitioners were, on June 2, 1921, by the superior court of Humboldt County, adjudged guilty of contempt of court and each sentenced to pay a fine of one hundred dollars, with the alternative of imprisonment in the county jail of said county, "until such fine be paid, at the rate of one day's imprisonment for every two dollars of said fine." They refused to pay the fines so imposed and were committed to the county jail, where they remained until the fourth day of June, 1921, at which time, upon the issuance by this court, upon their petition, of a writ of *habeas corpus* looking to their release from what they alleged to be the illegal restraint of their persons, they were set at liberty, having given the bail to which they were ordered to be admitted by this court upon the issuance of said writ.

Subsequently to the issuance of said writ of *habeas corpus* and prior to the hearing thereof, the petitioners filed in this court a petition praying for a writ of *certiorari* for the review of the proceedings culminating in the judgment of contempt against petitioners. Both proceedings ﹐ nding before us, therefore, involve precisely the same judgment of contempt, and the office of each of the writs applied for here by the petitioners is to determine precisely the same ultimate question, to wit: Whether the action of the court in adjudging petitioners guilty of contempt of court and punishing them therefor, upon the record upon which each of the applications is supported, was in excess of its jurisdiction. [1] Abstractly speaking, it is well understood that the sole question which may be determined, either upon *habeas corpus* or upon a writ of review, is that of jurisdiction, and if it be found in either case that the court whose action or judgment is thus attacked had jurisdiction to hear and determine the matter, the writ must be discharged, although it may appear upon the record that the court, in

passing upon and deciding the matter, had committed some errors of law.

In the proceeding before us upon the application for the writ of *certiorari*, as the very name of that writ implies shall be done, and in consonance to the remedial function peculiar thereto, the entire record of the proceeding bearing upon and eventuating in the judgment of contempt against each of the petitioners has been certified. to this court, and although, in view of the conclusion at which we have arrived, the ultimate question of law submitted here could be determined upon the record supporting either application, we prefer to confine ourselves, in determining whether the judgment of contempt against the petitioners was beyond the jurisdiction of the court to a consideration of the petition for the writ of *certiorari*, for the reason that, as we feel constrained to hold that the court exceeded its jurisdiction in the matter, a petition for a hearing in the supreme court after the decision on *certiorari* here will lie, while a discharge on *habeas corpus* would wholly terminate the matter, so far as is concerned the particular proceeding to which both petitions here are addressed.

The record certified to this court in response to the writ of review issued by this court herein discloses that the proceeding out of which grew the judgment of contempt against both petitioners involved a matter pending and being heard by the respondent court, sitting in separate session in the exercise of its jurisdiction as a juvenile court. It is thus made to appear that, on the tenth day of May, 1921, the probation officer of the county of Humboldt filed in the superior court of said county, as in the exercise of its juvenile jurisdiction, a petition, alleging that a certain unmarried Indian female "comes within the provisions of subdivisions 2, 4, and 11 of the juvenile court law of the state of California, in this: That said . . . has no parent or guardian willing to exercise or capable of exercising proper parental control, and has no parent or guardian actually exercising such proper parental control, and that said . . . is in need of such control," and further alleged that said minor "has within the three months last past given birth to an illegitimate child, which has since died; that the father and mother of said minor are living separate and apart, that said minor has been living with her father,

who is, by reason of his acts of cruelty and depravity, an unfit person to have the care, custody and control of said minor; that the home of the mother of said minor is not a fit and proper place for said minor to reside or to live in.'' It appears, at least inferentially, from the record, that the father of the said minor was accused of being responsible for the motherhood of the minor, although it does not so appear that the father was at the time of the proceeding before the superior court or under arrest.

Upon the filing of the petition above referred to a citation, directed to the father of said minor, was issued by the court, ordering his appearance with said minor before said court on the sixteenth day of May, 1921, and to show cause why said minor should not be adjudged a ward of the juvenile court. On the day named the matter came up for hearing, the minor being represented by the petitioners, who were law partners, and, after certain testimony had been received in support of the allegations of the petition, the minor was called to the stand, and before any attempt was made to question her the judge observed: ''Now, it might be possible that this recital [doubtless referring to a statement by the minor] may be spared. Isn't it possible,'' the judge proceeded to inquire, ''that this girl can be placed in some home?'' To this question the petitioner, Metzler, replied: ''That is all we ask, that this girl be placed in a home, a good home.'' After the court had asked whether the father would bear the expense of the support of the minor and an affirmative reply to said question by Mr. Metzler, the court declared: ''Then it is a matter of selecting a party under whom we will place her, some good woman and some good family.'' The court thereupon inquired: ''Is it satisfactory to both sides that Miss Beasley [executive secretary of the Welfare Department of the county of Humboldt] find parties that will be satisfactory to the court?'' to which petitioner, Metzler, answered: ''We will be satisfied with the family that Miss Beasley selects. We feel that Mr. —— [naming the father of the girl] should be permitted to visit his daughter at the Detention Home [the minor being in the custody of said home pending the final disposition of the proceeding], or that she be released. I feel that he should be given that right as a father.'' To this suggestion the district attorney declared

that he would object, unless the parties in charge of said home were present when the father visited and conversed with the minor.

The further hearing of the proceeding was then postponed until the nineteenth day of May, 1921, at which time, in objecting to the application of the district attorney for a further continuance of the matter until the following day, petitioner, Metzler, insisted that the minor, since she had not down to that time been adjudged a ward of the court, should be taken from the detention home and returned to the custody of her father, who, he declared, was compelled to support the minor, "no matter whether she was born in or out of wedlock." The petitioner proceeded to say that he desired to interview the little girl in order to get at the facts relative to the charge that her father had been guilty of the acts toward her of which he had been accused, intimating that he could not secure a truthful statement from the child as to the charge against her father while she was in the presence of the managers of the detention home. This proposition was objected to by the district attorney. Metzler thereupon stated to the court that he desired to withdraw from the stipulation previously entered into respecting the disposition that should be made of the minor by the court and the court in reply to that proposition stated that counsel could not withdraw from the stipulation without the consent of the court, nor could he do so without making a motion based upon a showing which would justify the court in permitting him to withdraw from the stipulation. The court also declared that he did not think that counsel (the petitioners) were acting in good faith in making their application to interview the little girl without the presence of her then custodians or in making their application to withdraw from the stipulation by which they agreed that the court could place the minor in the care and control of some good family pending her minority.

The matter then was continued until the following day, the 20th of May, 1921, and on said day Miss Beasley reported that she had up to that time been unable to secure a home or a proper person to whom the care and custody of the minor might be committed, and asked for further time within which to find such a home and person. Thereupon the district attorney moved for a further continuance

of the matter "until Miss Beasley's report is prepared and then the court inform the attorneys." At this juncture the petitioner, Mitchell, addressed the court as follows: "The other day a stipulation was entered into for the purpose of avoiding going into the sordid details of a minor of that age. It becomes necessary to go into it, and we informed the court after the stipulation was entered into that we withdrew our stipulation. We have subpoenaed our witnesses to-day." He proceeded to say that the witnesses were present in court at that time, "and if it is continued we would like to have it continued to a day certain in order to have our witnesses here, if necessary." To this the court replied: "You entered into a stipulation in this court, and it went down in the record; there is just one way for you to get relief from that stipulation, you know that as well as I do, that you will have to make a motion and do it upon affidavits and serve it properly. You, or no other attorney has a right to say this stipulation is off and you are not bound by it. You know that as well as I do, and as to subpoenaing witnesses here at this time, I told your partner yesterday that he could not do that. When did you get the subpoenas out of this court? Mr. Mitchell: The day we were in court. Court: Yesterday? Mr. Mitchell: No, prior to that time. Court: What day? Mr. Mitchell: It was delivered to the sheriff day before yesterday I believe. Court: Now, you have no right to issue any subpoena when there is no hearing at this time. There was no hearing at this time. Mr. Mitchell: It was continued. Court: What for? Who gave that subpoena to the sheriff, you or Mr. Metzler? Mr. Mitchell: I am not certain, I think Mr. Metzler gave it, but I am not certain. Court: Did you tell him to do it? Mr. Mitchell: Yes, your Honor. Court: And you knew there was no hearing here at that time. We will take this matter up next Thursday. Under section 1209 of the Code of Civil Procedure, disobediences are contempt of court and various items are set forth. The fourth is 'Abuse of the process or proceedings of the court.' Now, the county is not going to pay the witnesses. You had no right to subpoena these witnesses here at this time, and you and your partner are cited to appear in court next Thursday to show cause why you should not be punished for contempt of court, and you shall

pay those witnesses out of your own pocket—summoning people here to come at their own expense.  [To Mr. Cairns, Assistant District Attorney] I want you to look up this proposition, I don't know whether it is contempt of court or not, but it seems to me to verge very strongly on it. Mr. Cairns: Do you desire me to give any further notice? Court: You may serve the regular notice on the firm because Mr. Metzler is not here.  The motion of the attorneys Metzler & Mitchell for an order of this court to have control of this girl is denied.  Mr. Mitchell: Is the hearing continued until next Thursday?  Court: No, sir.  This contempt proceeding is a different proposition.  The other will be when Miss Beasley has found a suitable home, when she reports she has found a home, suitable for this girl.''

Immediately following the above proceedings a citation entitled, "In the Matter of S. E. Metzler and Ernest S. Mitchell, in Contempt,'' was issued and signed by the judge of said court, and the same served upon the petitioners, reciting the history of the proceedings relating to the matter of the petition to have the said minor adjudged a ward of the court, and referring to the statement of petitioners that they desired to withdraw from the stipulation mentioned and had subpoenaed witnesses to appear in court for the purpose of contesting the petition to have the minor declared a ward of the juvenile court, and requiring the petitioners to appear in said court at 10 o'clock in the forenoon of the twenty-sixth day of May, 1921, "then and there to show cause, if any you have, why you, and each of you, should not be adjudged to be guilty of contempt of this court for misbehavior in office and a willful violation of duty as officers and attorneys of this court, and for an abuse of the process of this court, as hereinabove set forth, and why you, and each of you, should not be punished therefor as provided by law.''

The citation above referred to was unverified and was the only document or paper supporting the proceeding in contempt, there having been no affidavit or affidavits filed charging the petitioners with contempt of court or the abuse of the process thereof.  On the twenty-sixth day of May the contempt matter was called and the petitioners demurred to the citation upon numerous grounds, among which were the following: 1. That the court has no jurisdic-

tion of the subject matter of the proceeding or of the persons of the petitioners for the reason that no affidavits or complaint have or has been filed "in this cause charging respondents with the commission of the matters and things set forth in the said order to show cause; . . . 2. That the court has no jurisdiction to punish respondents for contempt for the reason that none of their acts, or acts set out or mentioned in said order to show cause, constitute a contempt of court." Petitioners also filed a motion to quash the proceeding on the ground that the court had no jurisdiction to issue the said order to show cause, for the reason that "no affidavit, complaint, or other paper has ever been filed in said cause upon which to predicate said order to show cause," and "the acts, facts and things stated in said order to show cause do not constitute contempt of court."

From the demurrer and the motion to quash the proceeding, it is to be seen that the points upon which the petitioners claim the right to the nullification of the judgment of contempt pronounced against them are that the court was without jurisdiction to pronounce said judgment and that the facts upon which the proceeding was founded do not constitute or show contempt of court or a contumacious or any abuse of the process thereof.

The power or jurisdiction to impose punishments as for contempt of court not only inheres in the courts but, in this state, is expressly conferred upon them by the law. (Code Civ. Proc., secs. 1209 and 1211.) The latter section reads: "When a contempt is committed in the immediate view and presence of the court, or judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed. When the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court, or judge, of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officer."

[2] It will be noted, on an examination of the foregoing section, that, while a contempt committed in the immediate

view or presence of the court may be summarily punished—
that is to say, that, in such case, no formal charge or
proceeding is requisite to start in motion the court's juris-
diction or power to act in the premises—where the alleged
contempt is constructive or committed out of the view or
immediate presence of the court, the court's jurisdiction to
punish for a contempt so committed cannot operate or be
put in motion in the absence of the filing of a formal charge,
duly verified, or, in other words, in the absence of the
filing of an affidavit reciting the facts constituting the
alleged contempt. Indeed, in a case of contempt not com-
mitted in the immediate view or presence of the court the
affidavit upon which the proceeding in contempt must be
founded constitutes a complaint, and unless it, upon its
face, charges facts constituting a contempt, the court is
without jurisdiction to proceed. (*Batchelder* v. *Moore*,
42 Cal. 415; *Hutton* v. *Superior Court*, 147 Cal. 159, [81
Pac. 409]; *Overend* v. *Superior Court*, 131 Cal. 284, [63
Pac. 372]; *Rogers* v. *Superior Court*, 145 Cal. 91, [78
Pac. 344]; *Frowley* v. *Superior Court*, 158 Cal. 220, 226,
[110 Pac. 817]; *Mitchell* v. *Superior Court*, 163 Cal. 423,
[125 Pac. 1061]; *In re Selowsky*, 38 Cal. App. 569, 577,
[177 Pac. 301].)

[3] We are not prepared to say that the facts upon
which the court acted in adjudging the petitioners guilty of
contempt are not sufficient to constitute that offense, nor
is there any necessity for expressing herein an opinion
upon that proposition, since we are of the opinion that the
alleged contempt was one that was not committed in the
immediate view or presence of the court and that, there-
fore, the court did not acquire jurisdiction to punish the
petitioners as for contempt. It will be observed that the
sole ground upon which the adjudication of contempt is
founded was in the act or acts of the petitioners in sub-
poenaing witnesses to be present in court in the proceeding
initiated for the purpose of adjudging the minor referred
to a ward of the juvenile court under certain provisions of
the juvenile court law, after it had been stipulated by the
petitioners, as counsel for said minor, that the court might
make an order adjudging said minor a ward of said court.
The mere fact that the witnesses for whom the subpoenas
in question were issued responded to the process and ap-

peared in court while the proceeding against the minor was being heard does not and could not itself constitute an act of contempt. Their presence in court was merely the effect of the alleged act of contempt on the part of peti-' tioners.

There can be no possible doubt that the acts of the petitioners constituting the alleged contempt were committed outside the view and immediate presence of the court. A subpoena issued for the purpose of compelling the attendance of a witness in any proceeding in the superior court is issued by the clerk thereof, under the seal of the court, the act of issuing it is in its nature purely ministerial, and with the physical act of issuing the subpoena neither the court nor the judge thereof has anything to do. It may be, and generally is, issued without the judge or the court having any knowledge thereof until the witnesses appear in the proceeding in which their testimony is required, and then the court may only assume that such witnesses have been regularly subpoenaed. In this case, it is clear that the judge of the court had no knowledge whatever of the act of the petitioners in causing the witnesses to be subpoenaed until he was informed thereof by the petitioner Mitchell himself during the course of the proceeding involving the question of the disposition to be made of said minor. Thus it is plainly manifest that, as stated, the act of the petitioners in causing the subpoenas to be issued was committed outside of the immediate view and presence of the court. It has, however, been suggested that the admission of the petitioners before the court that they caused the subpoenas to be issued was sufficient to give the court jurisdiction of the petitioners and the subject matter of the alleged contempt. We do not assent to that proposition. As we have shown above, and as all the cases clearly and positively declare, to give the court jurisdiction to punish for contempt where the alleged contempt has been committed outside of its immediate view and presence, there must be an affidavit or affidavits or something in the nature of a complaint charging facts clearly disclosing that the contempt claimed has been committed. The situation is no different from that in which a person might appear before a court and openly confess in its presence that he had committed a crime. No one would for a

moment undertake to maintain that in such case, there being no complaint or indictment or other accusatory pleading on file charging the person with the crime of which he thus admitted he was guilty, the court in whose presence such admission was made would have jurisdiction to punish the party for the offense. Indeed, if the court should undertake to impose a penalty upon a person admitting his guilt in its presence in the absence of any formal complaint or indictment charging him with the offense, the act of the court would be wholly nugatory or *coram non judice.*

In accordance with the foregoing views the judgment of contempt rendered and entered by the respondent court against each of the petitioners, S. E. Metzler and Ernest S. Mitchell, is hereby annulled, set aside, and vacated, and the petition for the writ of *habeas corpus* dismissed and said writ discharged.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 20, 1921.

All the Justices concurred, except Shaw, J., who was absent.